1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   BRIGHTON COLLECTIBLES, INC., a            CASE NO. 06-CV-1848 H (POR)
     California corporation,
12                                             **ORDER GRANTING IN PART**
                                  Plaintiff,   **AND DENYING IN PART**
13        vs.                                  **DEFENDANT COLDWATER**
                                               **CREEK, INC.'S MOTION FOR**
14   COLDWATER CREEK, INC., a                  **SUMMARY JUDGMENT**
     Delaware corporation; and DOES 1
15   through 10, inclusive,
16
                                  Defendants.
17

18          On March 17, 2008, defendant Coldwater Creek, Inc. ("Defendant") filed a motion for

19   summary judgment.  (Doc. No. 111.)  Plaintiff Brighton Collectibles, Inc. ("Plaintiff") filed

20   a response in opposition on March 28, 2008.  (Doc. No. 116.)  Defendant filed a reply.  (Doc.

21   No. 127.)

22          The Court held a hearing on April 14, 2008.  Peter W. Ross and Steven W. Winton

23   appeared for Plaintiff.  Peter J. Brann and Alison L. Pivonka represented Defendant.  On April

24   16, 2008, the Court requested supplemental briefing regarding Plaintiff's claims for trade dress

25   infringement.  (Doc. No. 131.)  The parties have filed briefs in accordance with the Court's

26   order.  (See Doc. Nos. 134-136, 137, 160.)  After considering the parties' briefs, the arguments

27   of counsel and all the evidence properly before the Court, the Court for the following reasons

28   grants in part and denies in part Defendant's motion for summary judgment.

**Background**

Plaintiff designs, manufactures and distributes women's fashion accessories including handbags, luggage and various small leather products that sell under the trademark "Brighton." (First Am. Compl. ("FAC") ¶ 8.)  Plaintiff sells its products through small specialty or boutique stores. (Id. ¶ 9.)  Beginning in the early 1990s, the Brighton line of accessories featured an alleged distinctive trade dress which includes rare and costly leather elements, filigreed and silver-plated metal parts and ornamentation, and the prominent use of a heart emblem. (Id. ¶ 10.)  Plaintiff alleges that this trade dress has come to symbolize Plaintiff's goods in the minds of consumers. (See id. ¶ 12.)

Additionally, Plaintiff registered with the United States Copyright Office (1) the Carolina design, VA 972-295, effective September 28, 1998; and more recently (2) the Brighton Scroll design, VA 1-389-015, effective January 23, 2007. (See FAC ¶ 11.)  Plaintiff alleges that Defendant designs, manufactures, markets and sells handbags, luggage and other products that infringe Plaintiff's trade dress and use Plaintiff's copyrights without Plaintiff's permission. (Id. ¶ 13.)

Plaintiff's FAC, filed April 26, 2007, see Doc. No. 32, asserts claims for copyright infringement, trade dress infringement and false designation of origin, common law unfair competition, and statutory unfair competition.  In the present motion, Defendant seeks summary judgment in its favor on all of Plaintiff's claims.

**Discussion**

I.     **Motion for Summary Judgment**

       A.     **Rule 56 - Legal Standard and the Parties' Burdens**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a genuine factual issue for trial.  That burden may be satisfied, however, "by showing – that is, pointing out to the district court – that there is an

1    absence of evidence to support the non-moving party's case." <u>Celotex Corp. v. Catrett</u>, 477

2    U.S. 317, 325 (1986).

3         Here the Court concludes that Defendant has made a sufficient showing to shift to

4    Plaintiff the burden of demonstrating the existence of a genuine issue of material fact by

5    providing "specific facts" from interrogatories, depositions and other evidence produced

6    during discovery.  <u>Celotex Corp.</u>, 477 U.S. at 324.  A genuine issue for trial exists when,

7    considering the evidence in a light favorable to the non-moving party, a reasonable

8    factfinder could return a verdict for that party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

9    242, 248 (1986).

10   **B.  Copyright Infringement**

11        "In order to succeed in a copyright infringement claim, a plaintiff must show that he

12   or she owns the copyright and that defendant copied protected elements of the work." <u>Jada</u>

13   <u>Toys, Inc. v. Mattel, Inc.</u>, 518 F.3d 628, 636 (9th Cir. 2008).

14   **1.  Ownership of a Valid Copyright**

15        "Ownership of the copyright is . . . always a threshold question." <u>Lamps Plus, Inc.</u>

16   <u>v. Seattle Lighting Fixture, Inc.</u>, 345 F.3d 1140, 1144 (9th Cir. 2003).  "In any judicial

17   proceedings the certificate of a registration made before or within five years after first

18   publication of the work shall constitute prima facie evidence of the validity of the copyright

19   and of the facts stated in the certificate." 17 U.S.C. § 410(c).  "The evidentiary weight to

20   be accorded the certificate of a registration made [more than five years after first

21   publication] shall be within the discretion of the court." <u>Id.</u>

22        Here, the Court concludes that the certificate of registration constitutes prima facie

23   evidence of the validity of Plaintiff's Carolina heart design.  That design was first

24   published on January 1, 1998, and Plaintiff registered the Carolina heart with the Copyright

25   Office on September 28, 1998.  (<u>See</u> Kohl Decl., Ex. 4.)  The Brighton scroll, however, was

26   first published on September 15, 2000, but was not registered until January 23, 2007.  (<u>Id.</u>)

27   Accordingly, as to the Brighton scroll, the Court concludes that the registration certificate

28   does not constitute prima facie evidence of validity.

1    "To rebut the presumption" of validity, however, "an infringement defendant must

2    simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of

3    infringement." Lamps Plus, Inc., 345 F.3d at 1144.  "The statutory presumption of validity

4    can be rebutted if the alleged infringer demonstrates that the plaintiff's work is not original

5    but copied from another's work." Entertainment Research Group, Inc. v. Genesis Creative

6    Group, Inc., 122 F.3d 1211, 1218 (9th Cir. 1997); see Feist Publications, Inc. v. Rural

7    Telephone Service Co., Inc., 499 U.S. 340, 348 (1991) (copyright protection extends only

8    to those components of a work that are original to the author).  Here Defendant argues that

9    Plaintiff lacks evidence of the originality of its copyrighted designs, which Defendant

10   argues were merely inspired by existing uses of heart and scroll designs in fashion,

11   architecture and other settings.

12       Plaintiff's designers who created the Carolina heart and Brighton scroll designs have

13   testified regarding the originality and creativity of their designs.  (See Wesley Decl., Ex. 36

14   at 262:22-25; Ex. 37 at 88:22-90:22, 91:19-92:7, 141:16-143:24.)  Defendant does not point

15   to any evidence of a specific design copied by Plaintiff.  See Johnson Controls v. Phoenix

16   Control Systems, 886 F.2d 1173, 1175 (9th Cir. 1989) (assertion that "there are similar

17   programs in use by other companies" insufficient to rebut presumption of originality "in the

18   absence of any evidence that the plaintiff copied from" the other programs).  "[T]he

19   requisite level of creativity is extremely low; even a slight amount will suffice." CDN Inc.

20   v. Kapes, 197 F.3d 1256, 1260 (9th Cir. 1999).

21       Before considering whether Plaintiff possesses evidence demonstrating infringement

22   by Defendant, the Court must evaluate the scope of Plaintiff's copyrights.  Brown Bag

23   Software v. Symantec Corp., 960 F.2d 1465, 1475-76 (9th Cir. 1992) ("analytic dissection

24   is used not [only] for the purposes of comparing similarities and identifying infringement,

25   but for the purpose of defining the scope of plaintiff's copyright").  "[E]xpressions that are

26   standard, stock, or common to a particular subject matter or medium are not protectable

27   under copyright law." Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003).  Accordingly,

28   copyright law does not entitle Plaintiff to a monopoly in the use of hearts or scrolls on

women's handbags and fashion accessories.  See id. at 811 (plaintiff "may not prevent others from depicting jellyfish with tendril-like tentacles or rounded bells, because many jellyfish possess those body parts); Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls.").

"It is true, of course, that a combination of unprotectable elements may qualify for copyright protection."  Satava, 323 F.3d at 811; see Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1446 (9th Cir. 1994).  However, "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."  Satava, 323 F.3d at 811.  Here, the parties vigorously dispute the extent to which Plaintiff's designs are protected by copyright law.

**2.      Whether Plaintiff's Evidence Demonstrates Infringement by Defendant**

Copyright protection extends only to elements of a work "which are original, which is to say they are the product of independent creation, not novelty."  Jada Toys, Inc., 518 F.3d at 636.  Depending on the degree of protection to which a work is entitled, a copyright plaintiff must establish either "substantial similarity" between its design and the allegedly infringing products or "virtually identical copying" by Defendant.  Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir. 1997) (origin of substantial similarity standard); see Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d at 766 (9th Cir. 2003); Apple Computer, Inc., 35 F.3d at 1439 ("When the range of protectable expression is narrow, the appropriate standard for illicit copying is virtual identity.").  In this case, the Court need not resolve at summary judgment which standard Plaintiff must satisfy, because under either standard the Court concludes that a genuine issue for trial exists with respect to the Carolina heart, but not as to the Brighton scroll.

The Court concludes that, with respect to the Carolina heart, Plaintiff has satisfied its burden to come forward with evidence demonstrating that infringement by Defendant constitutes a genuine issue for trial.  Celotex Corp., 477 U.S. at 322.  Defendant points to

evidence of differences between its hearts and Plaintiff's Carolina heart.  (See Decl. of Ellen Goldstein-Lynch ISO Def's. Mot. for Summ. J. ¶¶ 8-10; Brann Decl. Ex. B at 135:4-137:4.)  Plaintiff responds with evidence – namely, the hearts themselves – demonstrating numerous and significant similarities.  As Plaintiff's Exhibit 11 shows, many apparent similarities exist between Plaintiff's Carolina heart and the heart design utilized by Coldwater.  (See Doc. No. 122.)  Both designs consist of hearts whose borders are "canyons" filled with similar-looking repeating patterns.  At the top center of both designs, the borders curve inward creating the heart shape, then continue curling beyond what is necessary to form the heart itself.  The borders then curve upward and inward in a similar fashion.  Additionally, Plaintiff points to documentary evidence, including e-mail correspondence between individuals within Coldwater as well as between Coldwater employees and outside designers, from which a reasonable jury could find access by Coldwater to the copyrighted designs.  (E.g., Wesley Decl., Ex. 32 (e-mail to Ms. Gonzalez-Barrett stating "I was . . . on the Brighton site").)  Based on the evidence submitted by each party, the Court concludes that Plaintiff has satisfied its burden to demonstrate the existence of a genuine issue for trial.  See Celotex Corp., 477 U.S. at 324.  Accordingly, the Court denies Defendant's motion for summary judgment with respect to Plaintiff's copyright claim for infringement of Plaintiff's Carolina heart design.

With respect to Plaintiff's Brighton scroll design, however, the Court concludes that Plaintiff's evidence fails to demonstrate the existence of a genuine issue for trial.  Celotex Corp., 477 U.S. at 322.  Although Plaintiff contends that the "ideas" of the two scroll patterns are the same, even the most cursory examination of the products discloses numerous differences between the patterns.  As Defendant's expert observed, Brighton's scroll utilizes a stylized "S" calligraphic design, while Defendant's allegedly infringing design is a scrollwork manipulation of a heart design.  (Wesley Decl., Ex. 12; see Decl. of Ellen Goldstein-Lynch ISO Def's Mot. for Summ. Judgment, Ex. M at 3.)  Brighton's pattern features more exaggerated swirls than the larger, more symmetrical hearts incorporated in Coldwater's scroll pattern.  In his deposition, Mr. Kohl was shown a

photograph of a Coldwater product and a Brighton bag and asked whether he could identify "any differences between the scroll" on the bags.  (See Decl. of Peter J. Brann ISO Def's. Mot. for Summ. Judgment, Ex. A, 128:4-6.)  Mr. Kohl responded: "Looking where I'm sitting right now?  Yes, of course."  (Id., Ex. A, 128:7-8.)  The Court concludes that Plaintiff's evidence fails to demonstrate a genuine dispute over whether Defendant's scroll is "virtually identical" to the Brighton scroll.  Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d at 766.  In light of the numerous differences between the two designs, the Court also concludes that Plaintiff's evidence fails to demonstrate a genuine dispute under the lower standard of "substantial similarity."  See Metcalf v. Bocho, 294 F.3d 1069, 1073 (9th Cir. 2002).  Therefore, the Court concludes that Defendant is entitled to summary judgment in its favor on Plaintiff's copyright claim for infringement of the Brighton scroll.

## C.    Trade Dress Infringement and False Designation of Origin

"Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics."  Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir. 2001); see Kendall-Jackson Winery, Ltd. v. E & J Gallo Winery, 150 F.3d 1042, 1044 n.2 (9th Cir. 1998).  Although Plaintiff asserts distinct claims for trade dress infringement and false designation of origin, both claims invoke 15 U.S.C. § 1125(a) and "the test is identical" whether the violation is called "infringement, unfair competition or false designation of origin."  New West Corp. v. NYM Co. of Cal., Inc., 595 F.2d 1194, 1201 (9th Cir. 1979); see Mattel Inc. v. Walking Mountain Prods., 353 F.3d 792, 809 n. 17 (9th Cir. 2003).

The trade dress asserted by Brighton in this case "consists of a sculpted, silver heart, used in conjunction with any two or more of the following: . . . (1) leather embossed to resemble exotic materials such as crocodile, alligator, snake and lizard; (2) filigreed, silver ornamentation; (3) a silver heart dangling from a leather strap; (4) cowhide or brocaded fabrics; and/or (5) additional sculpted silver hearts."  (See Brann Decl., Ex. F at 3-4.)

To establish trade dress infringement, Plaintiff must establish: "(1) that its claimed trade dress is nonfunctional; (2) that its claimed trade dress serves as a source-identifying

role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product . . . creates a likelihood of consumer confusion." <u>Clicks Billiards, Inc.</u>, 251 F.3d at 1258. The Supreme Court has stated that a product's design cannot be inherently distinctive. <u>Wal-Mart Stores, Inc. v. Samara Bros., Inc.</u>, 529 U.S. 205, 214-15 (2000). Therefore, "in an action for infringement of unregistered trade dress under . . . the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." <u>Id.</u> at 216.

### 1.    Secondary Meaning

The heart of Defendant's motion for summary judgment is Defendant's contention that Plaintiff lacks evidence establishing secondary meaning. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248. Secondary meaning is "a term of art for identification of source." <u>Clicks Billiards, Inc.</u>, 251 F.3d at 1262. A trade dress develops secondary meaning "when, in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product rather than the product itself." <u>Wal-Mart Stores, Inc.</u>, 529 U.S. at 211. "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner and length of use . . . , amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." <u>Filipino Yellow Pages v. Asian Journal Pubs., Inc.</u>, 198 F.3d 1143, 1151 (9th Cir. 1999).

Viewing the entire record in this case and drawing reasonable inferences in favor of Plaintiff, <u>see Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255, the Court concludes that Plaintiff meets its burden to come forward with sufficient evidence to demonstrate the existence of a genuine issue regarding whether Plaintiff's asserted trade dress possesses secondary meaning. Defendant points to the testimony of an expert witness who conducted a secondary meaning survey. (Decl. of Phil Johnson ISO Def's. Mot. for Summ. Judgment ("Johnson Decl.").) Defendant's expert concluded that only 3% of current and potential purchasers of women's handbags could identify a certain handbag made by Plaintiff as a Brighton product. (Johnson Decl. ¶ 4, Ex. L.) The percentage increased slightly when

Defendant's expert limited his subjects to women who have purchased a women's handbag for $150 or more. (Id. ¶ 5, Ex. L.)

A trade dress plaintiff may establish secondary meaning in a variety of ways. See Filipino Yellow Pages, 198 F.3d at 1151. In addition to direct consumer testimony and survey evidence, a plaintiff may establish secondary meaning by showing "exclusivity, manner and length of use . . . , amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." Filipino Yellow Pages v. Asian Journal Pubs., Inc., 198 F.3d 1143, 1151 (9th Cir. 1999). Here, Plaintiff responds with evidence demonstrating that Plaintiff's products have acquired secondary meaning. First, Plaintiff points to evidence of various individuals, some within or associated with Defendant, recognizing the existence of or specifically referring to a Brighton "look." For example, on September 22, 2005, an individual from Excel Handbags sent to Defendant's buyer of jewelry and accessories an e-mail with the subject "Brighton Look Hardware." (See Wesley Decl., Ex. 32.) The e-mail refers to an apparent request from Ms. Gonzalez-Barrett that the hardware on certain products be changed "to a more 'brighton-y' look for Fall." (Id.) Another e-mail to Ms. Gonzalez-Barrett referred to attached "Brighton inspired sketches." (Id.) Similarly, Plaintiff's Exhibit 8 includes an e-mail from a designer to Mr. Kohl in which the designer expressly notes that certain handbags she designed for a different company were "not a 'Brighton look.'" (Wesley Decl., Ex. 8.) The Court concludes that this evidence provides a basis from which a reasonable factfinder could find in Plaintiff's favor regarding whether Plaintiff's asserted trade dress has acquired secondary meaning.

Second, Plaintiff provides evidence showing possible intentional copying by Coldwater, namely e-mails between Coldwater's product developers referring to Brighton products and requests (noted in the previous paragraph) from Coldwater's vendors for certain products and/or hardware to look more like Brighton's. Although Defendant argues that even proof of deliberate copying, without more, cannot establish secondary meaning, proof of intentional copying remains a relevant consideration. See Filipino Yellow Pages,

1    198 F.3d at 1151 (listing ways to establish secondary meaning).

2         Additionally, Mr. Kohl's declaration possesses some probative value regarding one

3    factor relevant to the secondary meaning inquiry: the "manner and length of use" of the

4    elements of Brighton's asserted trade dress.  See Filipino Yellow Pages, 198 F.3d at 1151.

5    Plaintiff's Exhibits 1 and 2, along with the statements of Mr. Kohl, show that beginning

6    around 1990 Brighton's predecessor company created a line of leather belts made of

7    "croco" (leather embossed to resemble crocodile skin) and accessorized with sculpted

8    silver hardware.  The first Brighton line of handbags utilized several materials and features

9    of those belts, and those materials and features persist to the present day on at least a

10   certain core group of Brighton products.  While not alone establishing the existence of

11   secondary meaning, this evidence provides a basis from which a reasonable factfinder

12   could conclude that certain of Plaintiff's products have acquired a distinctive trade dress

13   that consumers associate with Plaintiff.  See Wal-Mart Stores, Inc., 529 U.S. at 211.

14        Further, Plaintiff provides some evidence that individuals employed by or associated

15   with Brighton often heard individuals refer to a "Brighton look" or "Brighton style."  (See

16   Kohl Decl. ¶ 14.)   This evidence has "limited probative value," Filipino Yellow Pages, 198

17   F.3d at 1152, but nonetheless assists Plaintiff in establishing the existence of a genuine

18   factual issue to survive summary judgment as to Plaintiff's trade dress claims.  Plaintiff

19   also provides evidence, see Moran Decl., Ex. 43, regarding amount of sales, which is

20   another way to establish secondary meaning.  See Filipino Yellow Pages, 198 F.3d at 1151.

21        In sum, the parties dispute whether Plaintiff's asserted trade dress possesses

22   secondary meaning.  Defendant points to a survey showing no secondary meaning; Plaintiff

23   criticizes the validity of Defendant's survey and comes forward with evidence

24   demonstrating the existence of secondary meaning.  "[A]t the summary judgment stage the

25   judge's function is not . . . to weigh the evidence and determine the truth of the matter but

26   to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc.,

27   477 U.S. at 249.  Here, the Court concludes that whether Plaintiff's trade dress possesses

28   secondary meaning constitutes a genuine issue.

2.      **Likelihood of Confusion**

On April 15, 2008, following the hearing on Defendant's motion for summary judgment, the Court directed Plaintiff to submit supplemental briefing "depicting every product made by Defendant that allegedly infringes Plaintiff's trade dress." (Doc. No. 131.) On April 28, 2008, Plaintiff filed a binder including photographs of thirteen products made by Coldwater that Plaintiff accuses of infringing its trade dress. (See Doc. No. 135.) The accused products are as follows:

| Product | Plaintiff's Exhibit |
|---|---|
| Coldwater Creek Heart Bag (H90089) | 3 |
| Coldwater Creek Heart Tote (H90071) | 5 |
| Coldwater Creek Heart Organizer & Wallet/Coin Purse (H90115) | 7 |
| Coldwater Creek Heart Organizer (H97877) | 9 |
| Coldwater Creek Half-Circle Clutch (TE9-0120) | 11 |
| Coldwater Creek Leather Bag (H99919) | 13 |
| Coldwater Creek Jacquard Bag (H90662) | 15 |
| Coldwater Creek Jacquard Hobo Bag (JE9-0087) | 17 |
| Coldwater Creek Jacquard Briefcase (VG9-0072) | 19 |
| Coldwater Creek Jacquard Wallet (VG9-0116) | 21 |
| Coldwater Creek Pebbled Hobo Bag (H90804) | 23 |
| Coldwater Creek Savvy Organizer (H90803) | 25 |
| Coldwater Creek Braid Strap Jacquard Bag (H90087) | 27 |

(See Doc. No. 135.) Defendant moves for summary judgment in its favor with respect to any Coldwater product not depicted in Plaintiff's supplemental briefing. (Doc. No. 137.)

The Court concludes that Defendant is entitled to summary judgment in its favor on Plaintiff's trade dress claims for infringement by any Coldwater product not listed in the chart above. A defendant may move for summary judgment by pointing out "that there is an absence of evidence to support the non-moving party's case." Celotex Corp., 477 U.S. at 325. As to products not listed in the chart above, therefore, the Court concludes that Plaintiff fails to provide "specific facts" demonstrating a genuine issue for trial on

1  Plaintiff's trade dress claims.  Celotex Corp., 477 U.S. at 324.

2        Defendant also moves for summary judgment in its favor as to each of the thirteen

3  Coldwater products that Plaintiff accuses of infringing Plaintiff's trade dress.  (Doc. No.

4  137.)  To survive summary judgment, Plaintiff bears the burden to come forward with

5  evidence demonstrating the existence of a genuine issue of material fact on each element of

6  Plaintiff's trade dress claims.  Celotex Corp., 477 U.S. at 324.  The trade dress asserted by

7  Plaintiff "consists of a sculpted, silver heart, used in conjunction with any two or more of

8  the following: . . . (1) leather embossed to resemble exotic materials such as crocodile,

9  alligator, snake and lizard; (2) filigreed, silver ornamentation; (3) a silver heart dangling

10 from a leather strap; (4) cowhide or brocaded fabrics; and/or (5) additional sculpted silver

11 hearts."  (See Brann Decl., Ex. F at 3-4.)  To establish infringement by Defendant, Plaintiff

12 must prove "that the defendant's product . . . creates a likelihood of consumer confusion."

13 Clicks Billiards, Inc., 251 F.3d at 1258.

14       After reviewing the evidence submitted by Plaintiff, the Court concludes that partial

15 summary judgment in Defendant's favor is warranted with respect to Defendant's Flower

16 Jute Organizer.[1]  (Plf's. Supp. Color Photographs ("Plf's. Supp."), Ex. 9.)  This accused

17 product lacks several elements of Plaintiff's trade dress and features a completely different

18 strap configuration than Plaintiff's allegedly infringed products.  (Compare Plf's. Supp.,

19 Ex. 9 with Ex. 10.)  The Court concludes that Plaintiff has failed to come forward with

20 evidence demonstrating a genuine issue regarding whether Defendant's Flower Jute

21 Organizer "creates a likelihood of consumer confusion."  Clicks Billiards, Inc., 251 F.3d at

22 1258.  A "failure of proof concerning an essential element of the nonmoving party's case

23 necessarily renders all other facts immaterial."  Id. at 322.  Accordingly, the Court grants

24 summary adjudication in Defendant's favor as to that product.

25 ///

26 ///

27 ///

28
_____
   [1]      Plaintiff refers to this product as a Coldwater "heart organizer."  (See Doc. No. 135.)

### 3.     Generic Analysis

Defendant also contends that Plaintiff's claimed trade dress is generic and, therefore, unprotectable as a matter of law.  In the Ninth Circuit, a generic product design is not entitled to protection because, by definition, it "can never meet the distinctiveness element."  Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 (9th Cir. 1998).  Therefore, the Court evaluates Plaintiff's trade dress claim according to the three elements required in the Ninth Circuit: nonfunctionality, distinctiveness (secondary meaning), and likelihood of confusion.  Clicks Billiards, Inc., 251 F.3d at 1258; see Wal-Mart Stores, Inc., 529 U.S. 205 at 216.  The Court notes that the proper focus of trade dress is "the total image, design, and appearance of a product."  Clicks Billiards, Inc., 251 F.3d at 1257; see J. Thomas McCarthy, McCarthy on Trademarks § 8:2 (4th ed. 2007) (defendant cannot avoid liability by segregating out various aspects of plaintiff's product and claiming that no single element is protectable in and of itself; "[i]t is the total combination of elements of the trade dress as defined by the plaintiff that is at issue").  Based on all the evidence properly before the Court, the Court concludes that whether Plaintiff's asserted trade dress is generic as to the remaining products would constitute a genuine issue for trial.

Plaintiff requested that the Court take judicial notice of its own orders in the cases Brighton Collectibles, Inc. v. Marc Chantal USA, Inc., Case No. 06-CV-1548 H (POR) and Brighton Collectibles, Inc. v. Renaissance Group International, Case No. 06-CV-1115 H (POR), as well as a June 20, 2007 order of the United States Court of Appeals for the Ninth Circuit affirming an order of this Court in the Renaissance action.  (Doc. No. 119.)  The Court did not need these documents in ruling on the present motion for summary judgment.  Plaintiff also objected to several declarations submitted by Defendant.  (Doc. Nos. 118, 128.)  In ruling on Defendant's motion for summary judgment, the Court has considered only such evidence as is proper under the rules.

///
///

1   ///

2   **Conclusion**

3       The Court grants Defendant's motion for summary judgment with respect to

4   Plaintiff's copyright claim for infringement of the Brighton scroll, and denies Defendant's

5   motion for summary judgment with respect to Plaintiff's copyright claim for infringement

6   the Carolina heart.

7       The Court grants in part and denies in part Defendant's motion for summary

8   judgment on Plaintiff's trade dress claims.  The Court grants summary adjudication as to

9   Defendant's Flower Jute Organizer.  (Plf's. Ex. 9.)  The Court denies Defendant's motion

10  for summary adjudication with respect to the following twelve products:

| Product | Plaintiff's Exhibit |
|---|---|
| Coldwater Creek Heart Bag (H90089) | 3 |
| Coldwater Creek Heart Tote (H90071) | 5 |
| Coldwater Creek Heart Organizer & Wallet/Coin Purse (H90115) | 7 |
| Coldwater Creek Half-Circle Clutch (TE9-0120) | 11 |
| Coldwater Creek Leather Bag (H99919) | 13 |
| Coldwater Creek Jacquard Bag (H90662) | 15 |
| Coldwater Creek Jacquard Hobo Bag (JE9-0087) | 17 |
| Coldwater Creek Jacquard Briefcase (VG9-0072) | 19 |
| Coldwater Creek Jacquard Wallet (VG9-0116) | 21 |
| Coldwater Creek Pebbled Hobo Bag (H90804) | 23 |
| Coldwater Creek Savvy Organizer (H90803) | 25 |
| Coldwater Creek Braid Strap Jacquard Bag (H90087) | 27 |

23      Since some of Plaintiff's federal claims survive summary judgment, so do Plaintiff's

24  dependent state law claims.  The Court therefore denies Defendant's motion for summary

25  judgment with respect to those claims.

26  IT IS SO ORDERED.
    DATED:  May 20, 2008

27

28  MARILYN L. HUFF, District Judge
    UNITED STATES DISTRICT COURT

- 14 -                                                        06cv1848