1
2

WINTON & LARSON, LLP
Steven W. Winton (State Bar No. 114425)
  swwinton@wintonlarson.com
11770 Bernardo Plaza Court, Suite 255
San Diego, CA 92128
Tel. (858) 385-0040 / Fax (858) 385-0050

3
4
5
6
7
8
9

DREIER STEIN KAHAN BROWNE
  WOODS GEORGE LLP
Peter W. Ross (State Bar No. 109741)
  pross@dskbwg.com
Keith J. Wesley (State Bar No. 229276)
  kwesley@dskbwg.com
Fox Plaza
2121 Avenue of the Stars, 24th Floor
Los Angeles, CA 90067
Tel. (310) 274-7100 / Fax (310) 275-5697

10
11
12

LAW OFFICES OF GARY FREEDMAN
Gary Freedman (State Bar No. 49922)
  goromans@aol.com
1149 Third Street, Suite 200
Santa Monica, CA 90403
Tel. (310) 576-2444 / Fax (310) 576-2440

13
14

Attorneys for Plaintiff
BRIGHTON COLLECTIBLES, INC.

15

UNITED STATES DISTRICT COURT

16

SOUTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| 18  BRIGHTON COLLECTIBLES, INC., a California corporation, | Case No. 06 CV 1848 H POR |
| 19                         Plaintiff, | **BRIGHTON'S NOTICE OF MOTION FOR ATTORNEYS' FEES, ENHANCED DAMAGES UNDER THE LANHAM ACT AND PREJUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 20          vs. | |
| 21  COLDWATER CREEK INC., a Delaware corporation; and Does 1 through 10, inclusive, | **[Declaration of Peter W. Ross and exhibits thereto filed concurrently herewith]** |
| 24                         Defendant. | |
| 25 | DATE:  January 16, 2009 TIME:  10:30 a.m. LOCATION:  Courtroom 13 |
| 27 | Before the Honorable Marilyn L. Huff |

212230_1.DOC

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on January 16, 2009, at 10:30 a.m., or as soon

3    after as the Court may allow, in Courtroom 13 of the above-entitled Court, located

4    at 940 Front Street, San Diego, CA 92101, plaintiff Brighton Collectibles, Inc.

5    ("Brighton") will and hereby does move this Court for an Order awarding Brighton

6    attorneys' fees, enhanced damages under the Lanham Act and prejudgment interest

7    related to the jury's November 21, 2008 Special Verdict against defendant

8    Coldwater Creek Inc. ("Coldwater") on Brighton's copyright infringement, trade

9    dress infringement, false designation of origin and unfair competition claims.

10        This Motion is made pursuant to Federal Rule of Civil Procedure 54(d), 17

11   U.S.C. § 505, 15 U.S.C. § 1117(a) and the November 21, 2008 verdict.  Following

12   a trial of Brighton's claims against Coldwater, the jury found that Coldwater

13   willfully committed trade dress infringement, copyright infringement and false

14   designation of origin.  The jury also found that Coldwater engaged in unfair

15   competition with malice, fraud and/or oppression.  The jury awarded Brighton

16   actual damages totaling $5,893,000 and wrongful profits totaling $1,499,000.

17   Therefore, Brighton unquestionably prevailed on each of its claims.  The Copyright

18   Act, the Lanham Act and relevant case law authorize and fully support an award of

19   attorneys' fees and prejudgment interest to Brighton.  The Lanham Act also

20   authorizes and encourages the imposition of enhanced damages for Coldwater's

21   willful infringement of Brighton's trade dress.  An award of attorneys' fees,

22   enhanced damages and prejudgment interest will discourage Coldwater and others

23   from engaging in willful infringement and similar intentional misconduct in the

24   future.

25   ///

26   ///

27   ///

28   ///

1        This Motion is based upon this Notice of Motion, the attached Memorandum

2    of Points and Authorities, the Declaration of Peter W. Ross, the exhibits thereto, the

3    files, records, and pleadings already on file in this action, and any other evidence or

4    argument that may be presented by Brighton at or before the hearing on this

5    Motion.

6    

7    Dated:  December 19, 2008        WINTON & LARSON, LLP
                        Steven W. Winton

8                            LAW OFFICES OF GARY FREEDMAN
                        Gary Freedman

9    

10                           DREIER STEIN KAHAN BROWNE
                        WOODS GEORGE LLP
                        Peter W. Ross

11                           Keith J. Wesley

12   

13                       By  /s/ Peter W. Ross           

14                       Attorneys for Plaintiff
                    BRIGHTON COLLECTIBLES, INC.

15   

16   

17   

18   

19   

20   

21   

22   

23   

24   

25   

26   

27   

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................1

II.   RELEVANT FACTUAL AND PROCEDURAL HISTORY........................2

    A.    Coldwater Sells Infringing Products, Brighton Sends Coldwater a Cease and Desist Letter and Coldwater Files a Preemptive Action Against Brighton in Coldwater's Home State ...........................2

    B.    Coldwater Withholds Critical Documents Until After Depositions and the Discovery Cut-Off................................................3

    C.    At Trial, Brighton Presents Extensive Evidence Of Coldwater's Willful Infringement And Other Wrongdoing .....................................4

        1.    Coldwater Was Very Familiar With the Brighton Trade Dress and Carolina Copyright........................................................5

        2.    Coldwater Developed a Practice of "Knocking Off" Other Designers...................................................................................5

        3.    Coldwater Intentionally Copied Brighton's Signature Luggage Collection and Iconic, Copyrighted Carolina Heart Ornament................................................................................6

    D.    Coldwater's Witnesses Deny Any Knowledge of Brighton's Designs .....................................................................................................8

    E.    The Jury Finds that Coldwater Willfully and Maliciously Infringed Brighton's Rights and Awards Brighton Actual Damages and Wrongful Profits in Excess of $7 Million ...................11

III.  THIS COURT SHOULD AWARD BRIGHTON ITS REASONABLE ATTORNEYS' FEES ..........................................................................12

    A.    Brighton is Entitled to its Fees Under the Copyright Act..................12

        1.    The Copyright Act Encourages an Award of Attorneys' Fees to the Prevailing Party .....................................................12

        2.    Brighton is the Prevailing Party Under the Copyright Act.......13

        3.    This Court Should Award Brighton its Reasonable Fees Under the Copyright Act..........................................................13

            a.    Brighton achieved overwhelming success on its copyright claims .............................................................14

            b.    Coldwater's defense was unreasonable and motivated in bad faith.........................................................14

            c.    Awarding the requested fees would compensate Brighton and deter Coldwater and other potential infringers...........................................................................14

    B.    Brighton is Entitled to its Fees Under the Lanham Act......................16

    C.    Brighton's Request for $1,235,404 in Attorneys' Fees is Supported by the Evidence and Reasonable Under the Circumstances .....................................................................................18

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

# TABLE OF CONTENTS
## (continued)

**Page**

    1.   The Hours Expended by Brighton's Counsel are Reasonable ...... 18

    2.   The Hourly Rate of Brighton's Counsel is Reasonable ........... 19

    3.   Conclusion:  Brighton's Total Requested Fees Are Reasonable ...... 20

IV.   THIS COURT SHOULD TREBLE OR DOUBLE BRIGHTON'S DAMAGES UNDER THE LANHAM ACT ...... 21

V.   THIS COURT SHOULD AWARD BRIGHTON PREJUDGMENT INTEREST ON THE JURY'S AWARD OF ACTUAL DAMAGES AND WRONGFUL PROFITS ...... 22

    A.   Prejudgment Interest Is Authorized Under Both the Copyright and Lanham Acts ...... 22

    B.   Brighton's Request for Prejudgment Interest is Reasonable and Necessary to Effectuate the Policies of the Copyright and Lanham Acts ...... 23

VI.   CONCLUSION ...... 24

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

# TABLE OF AUTHORITIES

**Page**

*Atlantic Recording Corp. v. Andersen,*
2008 WL 2536834 (D. Or. June 24, 2008)....................................................12

*Babbit Electronics, Inc. v. Dynascan Corp.,*
828 F. Supp. 944 (S.D. Fla. 1993)..........................................................23

*Branch v. Ogilvy & Mather, Inc.,*
772 F. Supp. 1359 (S.D.N.Y. 1991)......................................................12, 13

*Canon U.S.A., Inc. v. Tiger Wholesale,*
1994 WL 219995 (C.D. Cal. Mar. 29, 1994) ........................................21

*Caplan v. CNA Financial Corp.,*
2008 WL 3970864 (N.D. Cal. Aug. 20, 2008)..............................................20

*Cartier v. Symbolix Inc.,*
544 F. Supp. 2d 316 (S.D.N.Y. 2008)........................................................21

*Chalmers v. City of Los Angeles,*
796 F.2d 1205 (9th Cir. 1986).............................................................18

*Chi-Boy Music v. Charlie Club, Inc.,*
930 F.2d 1224 (7th Cir. 1991)...............................................................15

*Derek Andrew, Inc. v. Poof Apparel Corp.,*
528 F.3d 696 (9th Cir. 2008) .............................................................16, 18

*Dunn & Fenley, LLC v. Allen,*
2007 WL 2973549 (D. Or. Oct. 9, 2007) .....................................................12

*Earthquake Sound Corp. v. Bumper Industrial,*
352 F.3d 1210 (9th Cir. 2003).......................................................16, 17, 18

*Eldorado Stone LLC v. Renaissance Stone,*
2007 WL 3308099 (S.D. Cal. Oct. 24, 2007).............................................19, 20

*Excelsior College v. Frye,*
2007 WL 672517 (S.D. Cal. Feb. 21, 2007) ................................................23

*Fischer v. SJB-P.D. Inc.,*
214 F.3d 1115 (9th Cir. 2000).............................................................18, 19

*Frank Music Corp. v. Metropolitan-Goldwyn-Mayer Inc.,*
886 F.2d 1545 (9th Cir. 1989).....................................................12, 14, 23, 24

*Friend v. H. A. Friend & Co.,*
416 F.2d 526 (9th Cir. 1969) ...............................................................21

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

-iii-

# **TABLE OF AUTHORITIES**
## (continued)

**Page**

*Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.,*
874 F.2d 431 (7th Cir. 1989)..................................................21, 23

*Hawkins-Dean v. Metropolitan Life Insurance Co,*
2007 WL 2735684 (C.D. Cal. Sep. 18, 2007)...........................19, 20

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ...........................................................18

*Historical Research v. Cabral,*
80 F.3d 377 (9th Cir. 1996)...................................................12

*Hogan Systems, Inc. v. Cybersource International, Inc.,*
158 F.3d 319 (5th Cir. 1998)..................................................12

*In Design v. K-Mart Apparel Corp.,*
13 F.3d 559 (2d Cir. 1994)....................................................15

*In the Matter of Oil Spill by the Amoco Cadiz,*
954 F.2d 1279 (7th Cir. 1992).................................................22

*Jackson v. Sturkie,*
255 F. Supp. 2d 1096 (N.D. Cal. 2003)......................................12

*Jordan v. Multnomah County,*
815 F.2d 1258 (9th Cir. 1987).................................................19

*Magnuson v. Video Yesteryear,*
85 F.3d 1424 (9th Cir. 1996)..................................................15

*Mitchell v. Metropolitan Life Ins. Co.,*
2008 WL 1749473, at *2 (C.D. Cal. April 7, 2008).......................20

*Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.,*
880 F. Supp. 1005 (S.D.N.Y. 1994)..........................................21

*Moore v. Bank of America, N.A. (USA),*
2008 WL 68851 (S.D. Cal. Jan. 7, 2008).....................................20

*Nelson v. EG&G Energy Measurements Group, Inc.,*
37 F.3d 1384 (9th Cir. 1994)..................................................24

*Nintendo of America, Inc. v. Dragon Pacific International,*
40 F.3d 1007 (9th Cir. 1994)..................................................21

*Nintendo of America, Inc. v. NTDEC,*
822 F. Supp. 1462 (D. Ariz. 1993)............................................23

*Pande v. ChevronTexaco Corp.,*
2008 WL 906507 (N.D. Cal. Apr. 1, 2008) ..................................20

-iv-

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Petroleum Sales, Inc. v. Valero Refining Co.-California,*
    2007 WL 2694207 (N.D. Cal. Sep. 11, 2007)................................20

*Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.,*
    692 F.2d 1272 (9th Cir. 1982)........................................17, 18, 21

*Polar Bear Productions, Inc. v. Timex Corp.,*
    384 F.3d 700 (9th Cir. 2004).............................................22, 23

*Polo Fashions, Inc. v. Dick Bruhn, Inc.,*
    793 F.2d 1132 (9th Cir. 1986)..................................................17

*Precision Craft Log Structures, Inc. v. Cabin Kit Co., Inc.,*
    2007 WL 1412502 (D. Idaho Jan. 17, 2007)..........................23

*Rio Properties, Inc. v. Rio Intern. Interlink,*
    284 F.3d 1007 (9th Cir. 2002).................................................16

*Scanlon v. Kessler,*
    23 F. Supp. 2d 413 (S.D.N.Y. 1998).......................................13

*Sealy, Inc. v. Easy Living, Inc.,*
    743 F.2d 1378 (9th Cir. 1984).................................................16

*Sherwood Brands of Rhode Island, Inc. v. Smith Enterprises, Inc.,*
    2003 WL 22061871 (D.R.I. Mar. 31, 2003) ..........................23

*Smith v. Jackson,*
    84 F.3d 1213 (9th Cir. 1996)..................................................13

*Thoroughbred Software International, Inc. v. Dice Corp.,*
    486 F.3d 352 (6th Cir. 2007)............................................12, 13

*U-Haul International v. Jartran Inc.,*
    793 F.2d 1034 (9th Cir. 1986).................................................21

*United Steelworkers of America v. Phelps Dodge Corp.,*
    896 F.2d 403 (9th Cir. 1990)............................................18, 19

*VMG Enterprises, Inc. v. F. Quesada & Franco, Inc.,*
    788 F. Supp. 648 (D.P.R. 1992)..............................................21

*Wall Data Inc. v. Los Angeles County Sheriff's Department,*
    447 F.3d 769 (9th Cir. 2006)............................................13, 14

## DOCKETED CASES

*Brighton v. Renaissance Group International,* Case No. 06CV1115 - ...................24

-v-

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

# TABLE OF AUTHORITIES
(continued)

**Page**

## FEDERAL STATUTES

17 U.S.C.
    § 505 ................................................................................12

15 U.S.C.
    § 1117(a).....................................................................16, 21

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

BRIGHTON'S MOTION FOR ATTORNEYS' FEES, ENHANCED
DAMAGES UNDER THE LANHAM ACT AND PREJUDGMENT INTEREST

1    **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2    **I.    <u>INTRODUCTION</u>**

3          Beginning on November 12, 2008, this Court held a jury trial on the claims

4    of Brighton Collectibles, Inc. ("Brighton") against Coldwater Creek Inc.

5    ("Coldwater") for copyright infringement, trade dress infringement, false

6    designation of origin and unfair competition.  On November 21, 2008, the jury

7    rendered a verdict finding that Brighton prevailed on all four claims at issue.  The

8    jury specifically found that Coldwater acted willfully in committing copyright

9    infringement, trade dress infringement and false designation of origin and that

10   Coldwater engaged in unfair competition with malice, fraud and/or oppression.  As

11   a result, the jury awarded actual damages of $5,893,000 and wrongful profits of

12   $1,499,000 against Coldwater.  Based on the jury's findings, the law encourages an

13   award of attorneys' fees, enhanced damages and prejudgment interest.

14         Coldwater's conduct throughout this litigation further supports Brighton's

15   request.  Despite clear evidence of infringement, Coldwater sought to bully

16   Brighton into either dismissing its claims or accepting a disproportionally small

17   settlement to end this litigation.  Coldwater also did everything in its means to hide

18   the truth, including withholding documents and repeatedly lying under oath.  For

19   example:

20       • When Brighton sent Coldwater a cease and desist letter, Coldwater's

21            counsel asked for (and Brighton's counsel granted) additional time to

22            respond.  Instead of responding, Coldwater filed a declaratory relief

23            action in its home state (which was subsequently dismissed).

24       • Throughout discovery, Coldwater withheld the key documents evidencing

25            that Coldwater's product developers (a) referred to the infringing products

26            as the "Brighton collection" and "Brighton shoe", (b) repeatedly asked

27            Coldwater's vendor for "Brighton look" designs, (c) monitored Brighton's

28            website for design ideas and (d) casually referred to knocking off the

1   designs of Coldwater's competitors. Coldwater did not produce these

2   documents until after the close of discovery, after depositions and only

3   after Brighton subpoenaed them from Coldwater's vendor.

4   • Both at depositions and at trial, Coldwater's witnesses repeatedly lied

5   under oath. Their testimony was directly contradicted by documentary

6   evidence as well as common sense. The verdict makes clear that the jury

7   discounted the testimony of Coldwater employees in full.

8   The relief that Brighton requests herein will not only make Brighton whole.

9   It encourages other intellectual property owners to protect their interests against

10   blatant and willful infringement. Most importantly, it deters Coldwater and others

11   from engaging in similar intentional misconduct and abusive litigation tactics in the

12   future.

13   **II. RELEVANT FACTUAL AND PROCEDURAL HISTORY**

14   **A. Coldwater Sells Infringing Products, Brighton Sends Coldwater a**

15   **Cease and Desist Letter and Coldwater Files a Preemptive Action**

16   **Against Brighton in Coldwater's Home State**

17   In 2005-2006, Coldwater sold a line of handbags and wallets that had the

18   same look and many identical design details as Brighton's popular luggage and

19   related accessory line. (*See* Trial Exs. 103, 326, 333-336.)[1] Coldwater's line also

20   incorporated a heart ornament that was nearly identical to and clearly copied from

21   Brighton's iconic, copyrighted "Carolina heart" design. (*See* Trial Ex. 333.)

22   On August 23, 2006, counsel for Brighton sent Coldwater a cease-and-desist

23   letter stating that Coldwater's products infringed upon Brighton's copyright and

24   trade dress. (Ex. J.) Coldwater's counsel asked Brighton's counsel for additional

25   time to respond to the letter. (Ex. K.) Brighton's counsel agreed to the extension.

26   (Ex. L.) Rather than respond to Brighton's letter, on September 7, 2006, Coldwater

27
28   ─────────────
[1]   The relevant trial exhibits cited herein are appended under their same trial exhibit numbers to the Declaration of Peter W. Ross, which is filed concurrently herewith. The additional exhibits cited herein are also appended to the Ross Declaration under letter designations.

1    preemptively filed a declaratory relief action against Brighton in the District of

2    Idaho – Coldwater's home district. (Ex. M.) On September 12, Brighton filed this

3    action against Coldwater, alleging copyright infringement (based on the Carolina

4    heart), trade dress infringement, false designation of origin and unfair competition

5    (both common law and statutory).[2] This Court denied Coldwater's motion to

6    dismiss or transfer this action to Idaho, and the District of Idaho dismissed

7    Coldwater's declaratory relief action.[3] (*Id.*)

8          **B.**    **Coldwater Withholds Critical Documents Until After Depositions**

9               **and the Discovery Cut-Off**

10         While Coldwater furiously sought discovery from Brighton, it was

11   simultaneously withholding production of its own key, self-incriminating emails.

12   In Brighton's First Request for Production of Documents, Brighton demanded that

13   Coldwater produce all documents that mention Brighton. (Ross Decl., ¶ 17.) On May

14   15, 2007, Coldwater responded by asserting that it would produce all relevant

15   documents. (*Id.*) However, Coldwater did not produce any email correspondence that

16   mentioned Brighton. (*Id.*) Over six months later, Coldwater had still failed to

17   produce any email correspondence that mentioned Brighton, yet Coldwater assured

18   Brighton that all documents requested in Brighton's initial document requests had

19   been produced. (*Id.*) In January 2008, Brighton took the depositions of

20   Coldwater's relevant employees. (*Id.*) At the depositions, the Coldwater employees

21   denied the existence of documents referencing Brighton.[4] (Ex. B (Gonzalez-Barrett

22   Trial Testimony [TT] at III-20:3-8).) They also denied copying, referencing or

23

---

24   [2]   Throughout this action, Brighton has been represented by three law firms: (1) Dreier Stein Kahan Browne Woods George LLP; (2) Winton & Larson; and (3) the Law Offices of Gary Freedman. (*See* Ross Decl.)

25

26   [3]   Because Brighton's counsel were not licensed to practice in Idaho, Brighton was required to hire a lawyer in Idaho (Brad Frazer) to aid in obtaining a dismissal of the Idaho action. (*See* Ross Decl.)

27

28   [4]   At least one relevant employee, Rebecca Ermini, however, confirmed that she had neither looked for nor been instructed to look for any documents or emails referencing Brighton. (Ex. D (Ermini TT at 24:18-25:5).)

1    even being aware of the Brighton designs that Coldwater allegedly infringed upon.

2           On February 11, 2008, Brighton served a subpoena on Coldwater's vendor,

3    Excel Handbags. (Ross Decl., ¶ 18.)  Brighton requested that Excel produce all

4    documents that referred to Brighton by February 25.  (*Id.*)  On February 20 (two

5    days after the discovery cutoff), Brighton received two banker's boxes of

6    documents from Coldwater.  (*Id.*)  Most of the documents were pictures of products

7    and related design documents.  (*Id.*)  At the back of the production was a small

8    stack of emails.  (*Id.*)  The stack included critical emails that had never before been

9    produced or identified.  In the emails, Coldwater's product developers referred to

10   Coldwater's "Brighton collection" and "Brighton-esque" ornaments.  In the emails,

11   Coldwater requested from Excel "Brighton look" briefbags and more "Brightony"

12   hardware. (*See* Trial Exs. 249, 254, 269-271.)  The emails confirmed that

13   Coldwater's product developers reviewed the Brighton website for heart ornaments

14   prior to developing the infringing products at issue herein.  (Trial Ex. 255.)  A

15   Coldwater purchase order in the production referred to the infringing shoe at issue

16   as the "Brighton shoe".  (Trial Ex. 246.)  The emails also showed that Coldwater's

17   product developers regularly and casually mentioned knocking off the products of

18   other companies.  (Trial Ex. 305.)

19          In sum, the emails made two things very clear:  (1) Coldwater's product

20   developers intended to copy Brighton's designs; and (2) Coldwater's employees had

21   lied extensively under oath at their depositions.[5]

22   **C.    At Trial, Brighton Presents Extensive Evidence Of Coldwater's**

23   **Willful Infringement And Other Wrongdoing**

24          Beginning on November 12, 2008, this Court held a six-day jury trial on

---

[5]     The timing of the production also could lead a reasonable observer to conclude that
Coldwater withheld the "smoking gun" correspondence until it realized that those documents
would be produced by its vendor (thus, revealing that Coldwater had been hiding these
documents).

BRIGHTON'S MOTION FOR ATTORNEYS' FEES, ENHANCED
DAMAGES UNDER THE LANHAM ACT AND PREJUDGMENT INTEREST

1  Brighton's claims against Coldwater.[6]  The evidence at trial showed the following:

2          1.  <u>Coldwater Was Very Familiar With the Brighton Trade Dress</u>

3            <u>and Carolina Copyright</u>

4        Coldwater was very familiar with Brighton and Brighton products.

5  Brighton's predecessor, Leegin, had sold products in Coldwater catalogues starting

6  in the 1990s.[7]  (Ex. B (Gonzalez-Barrett TT at III-11:14-12:13); Ex. F (Delducco

7  TT at III-176:9-21).)  In fact, one of the Brighton products that Coldwater had sold

8  was the copyrighted Carolina watch at issue in this case!  (*See id.*; *see also* Trial Ex.

9  102.003.)  According to Coldwater's former buyer of jewelry and accessories, Amy

10  Delducco, the Coldwater product development team loved the look of Brighton

11  handbags and discussed carrying those bags in Coldwater catalogues; however,

12  Coldwater ultimately decided not to carry authentic Brighton bags due to price

13  constraints.  (Ex. F (Delducco TT at III-180:15-181:14).)

14          2.  <u>Coldwater Developed a Practice of "Knocking Off" Other</u>

15            <u>Designers</u>

16        Coldwater has a history of "knocking off" the designs of other companies.

17  Coldwater has repeatedly been sued for intellectual property infringement.  (*See*

18  Trial Ex. 240; Ex. E (Shonk-Simmons TT at IV-10:13-17).)  Ms. Delducco

19  confirmed that Coldwater had knocked off other designers who were unable or

20  decided not to bring formal litigation against Coldwater.  (Ex. F (Delducco TT at

21  III-188:16-191:10).)  Another designer, Neal Decker, testified that Coldwater

22  representatives had told him they were interested in placing an order for his

23  handbags.  Rather than placing an order with Decker, Coldwater simply copied

---

24  [6]    Brighton had amended its original complaint to add a copyright infringement claim based
25  on the "Brighton Scroll" copyright. This Court granted summary judgment on that claim.
   Therefore, Brighton's copyright claim at trial was based solely on the "Carolina heart".

26  [7]    Moreover, Coldwater was well-aware that Brighton copyrighted many of its designs. (*See*
27  Trial Ex. 94.006; *see also* Ex. B (Gonzalez-Barrett TT at III-16:24-17:2, 17:6-8) ("Q. Now, you
   personally remember seeing some paperwork from Ms. Hernando with a handwritten statement
28  on it that said 'Our designs are copyrighted,' true? A. Yes. . . . Q. And you personally had
   discussions with Ms. Hernando about Brighton's designs being copyrighted, true?  A. Yes").)

-5-

1   Decker's samples and sold them as Coldwater's own.  (Ex. G (Decker TT at II-77:1-

2   78:6).)  Finally, Coldwater's internal emails evidenced that Coldwater product

3   developers are fully aware that Coldwater has had a practice of knocking off other

4   companies.[8]  (Trial Ex. 305) ("[W]e cannot continue to see every style that Chicos

5   is doing and then knocking it off").

6                    3.   Coldwater Intentionally Copied Brighton's Signature Luggage

7                         Collection and Iconic, Copyrighted Carolina Heart Ornament

8           In 2005, Coldwater intentionally created a line of Brighton knockoff

9   handbags and accessories.  This product line was formally called the "jacquard

10  line".  Internally, it was referred to as the "Brighton collection."  (Trial Ex. 271.)

11  Prior to creating the Brighton collection, Coldwater's handbag developer, Linda

12  Gonzalez-Barrett and Coldwater's footwear developer, Becky Ermini, visited the

13  Brighton website and discussed sample Brighton heart hardware.  (Trial Ex. 255.)

14  During the development of the Brighton collection, Ms. Gonzalez-Barrett gave

15  detailed instructions to Coldwater's vendor, Excel Handbags, regarding the design

16  of the products in the collection.  Ms. Gonzalez-Barrett's instructions were intended

17  to ensure that the Coldwater products resembled Brighton products – in particular,

18  Brighton's popular luggage collection.  Coldwater instructed Excel to (1) make all

19  zipper pull tabs heart shaped, (2) make the "feet" on the bottom of the bags heart

20  shaped, (3) use the same heart hardware on each product in the group, (4)

21  incorporate a red and black color scheme and (5) utilize a braided leather handle —

22  all unique features of Brighton's products.[9]  (Trial Exs. 97, 334-336.; Ex. C (Reed

23

---

24  [8]     Indeed, Brighton presented evidence that Coldwater recently began selling a near-exact
        copy of a copyrighted Brighton watch.  (*Compare* Trial Ex. 429 *with* 430; *see also* Ex. E (Shonk-
25  Simmons TT at IV-78:25-79:2 ("Q. You'd have to agree that that – that your Cimeron watch is a
        knockoff of the Brighton watch, correct?  A. Yes, it would appear so.").)

26  [9]     Coldwater regularly creates powerpoint presentations that it sends to vendors regarding
27  the creation of new lines.  Although Coldwater produced an email showing that such a
        powerpoint presentation existed for the "jacquard collection", nobody from Coldwater could
28  locate that particular powerpoint.  Therefore, it was conspicuously absent from the trial.  (Trial
        Ex. 97.002) (Attachments:  Excel Jacquard Program.ppt").

1 | TT II-116:3-117:17, 118:21-119:1, 119:22-24, 120:25-121:24).)

2 |      Ms. Gonzalez-Barrett also selected the heart hardware for Coldwater's

3 | Brighton collection.  Although presented with myriad options, Ms. Gonzalez-

4 | Barrett chose a nearly identical copy of Brighton's signature Carolina heart.  (Trial

5 | Ex. 333; Ex. C (Reed TT II-102:25-103:17).)  Ms. Gonzalez-Barrett also selected

6 | the jacquard pattern for Coldwater's Brighton collection.  (Ex. C (Reed TT II-

7 | 106:23-107:6).)  She reviewed a variety of drafts with minor variations, but

8 | common throughout those drafts was some combination of scrolls and hearts.  The

9 | jacquard pattern Ms. Gonzalez-Barrett ultimately selected is similar to and

10 | clearly based upon Brighton's signature pattern — the Brighton Scroll — which is

11 | used not only on Brighton luggage, but Brighton tissue paper and packaging as

12 | well.  (Trial Ex. 334.)  Most significantly, the elements of Coldwater's Brighton

13 | collection were combined to copy the Brighton look.[10]  (Trial Ex. 103.)

14 |      Coldwater's Brighton collection was a success.  Therefore, Ms. Gonzalez-

15 | Barrett sought to expand Coldwater's line of Brighton knockoffs.  She requested

16 | Excel Handbags to create "'Brighton' inspired sketches", "Brighton Look briefbags"

17 | and hardware that was "more 'brighton-y'".  (Trial Exs. 250, 269, 270.)

18 |      Consumers were confused by Coldwater's Brighton look-a-likes. Brighton's

19 | marketing expert, Dr. Carol Scott, conducted a likelihood of confusion survey that

20 | found that over 85% of consumers believed a Coldwater infringing handbag was

21 | made, sponsored or endorsed by the same company that made Brighton handbags.

22 | (Ex. H (Scott TT at IV-118:2-119:25).)  Other witnesses – *e.g.*, Emily Bresler and

23 | Amy Delducco – testified that they were actually confused as to Brighton's

24 | connection to the infringing products.  Indeed, the look of the Coldwater and

25 | Brighton bags were so similar that Coldwater's own design expert, Ellen Goldstein,

26 | confused them at both her deposition and at trial!  (Ex. I (Goldstein TT at 45:7-

27 28 | ---
[10]     In conjunction with the Brighton collection of handbags, Coldwater also designed what it described internally as the "Brighton shoe", which incorporated the Carolina Heart and mimicked the design of a mule being sold by Brighton.  (Trial Exs. 246, 423-424.)

BRIGHTON'S MOTION FOR ATTORNEYS' FEES, ENHANCED
DAMAGES UNDER THE LANHAM ACT AND PREJUDGMENT INTEREST

46:4, 62:11-63:18).)

**D.**    **Coldwater's Witnesses Deny Any Knowledge of Brighton's Designs**

Despite the clear evidence that Coldwater intended to sell Brighton knockoffs, Coldwater's witnesses continued at trial to deny any knowledge of Brighton's designs. Coldwater's witnesses' testimony was inconsistent with statements they made in documents as well as common sense. The pattern of inconsistencies and improbabilities revealed a strategy of deception. Below is a chart listing just some of the inconsistencies and improbabilities testified to under oath by Coldwater's witnesses.

**Rebecca Ermini – Coldwater Senior Product Developer for Footwear**

| Testimony | Evidence to the Contrary |
|---|---|
| Q. Have you ever visited the Brighton website? A. No. (Ex. D (Ermini TT 10:2-4)) | "I was out on the Brighton site and they have a lot of hearts. This kind of looked like one you showed me yesterday?" (Trial Ex. 255: March 16, 2005 Email from Becky Ermini to Linda Gonzalez) |
| Q. Have you ever spoken with anybody at Coldwater about Brighton? A. No. (Ex. D (Ermini TT 10:9-11)) | "I was out on the Brighton site and they have a lot of hearts. This kind of looked like one you showed me yesterday?" (Trial Ex. 255: March 16, 2005 Email from Becky Ermini to Linda Gonzalez)<br><br>"Linda, Can I have a heart ornament off one of your bags?" (Trial Ex. 249: April 19, 2006 Email from Becky Ermini to Linda Gonzalez entitled "Subject: ornament for your Brighton collection") |
| Q. Did you ever have any discussions with Ms. Gonzalez-Barrett about this hardware or its predecessor, the larger heart designs? A. No.<br><br>Q. Did you ever have any discussions with Ms. Gonzalez-Barrett about the handbag line that was coordinated with this shoe? A. No. (Ex. D (Ermini TT 21:8-17))<br><br>Q. Did you have any written communications with any other person regarding this heart hardware? A. Not to my knowledge. (Ex. D (Ermini TT | "Subject: ornament for your Brighton collection."<br><br>"Linda, Can I have a heart ornament off one of your bags?" (Trial Ex. 249: April 19, 2006 Email from Becky Ermini to Linda Gonzalez entitled "Subject: ornament for your Brighton collection") |

| | |
|---|---|
| 25:3-6)) | |
| Q. Have you ever seen this style shoe used before? A. I haven't. I mean I haven't seen it from Brighton. I've obviously seen it here. (Ex. D (Ermini TT 23:15-21)) | "Your item: Brighton Shoe H91956 Croc Toe Woven Band Mule" (Trial Exs. 246, 423-424) |

### Linda Gonzalez-Barrett – Coldwater Senior Product Developer for Jewelry & Accessories

| Testimony | Evidence to the Contrary |
|---|---|
| Q. At deposition you told us that Brighton never came up in any of your discussions with Karen Reed prior to the filing of this lawsuit, true? A. True. (Ex. B (Gonzalez-Barrett TT III-19:24-20:2)) | "Linda, Please see the attached sketches of 'Brighton' briefbags that you requested to go along with the sketches sent on Friday." (Trial Ex. 270: October 3, 2005 Email from Excel Handbags Design Department to Linda Gonzalez-Barrett and cc'ing Karen Reed entitled "Brighton Look Briefbags")

"Linda, As per your request, please see the attached 'Brighton' inspired sketches." (Trial Ex. 269: October 3, 2005 Email from Excel Handbags Design Department to Linda Gonzalez-Barrett entitled "'Brighton' Sketches")

"Linda, When Karen and I had met with you in July, we had shown you some styles and you requested we change the hardware on them to a more 'brighton-y' look for Fall." (Trial Ex. 250: Sept. 22, 2005 Email from Excel Handbags Design Department to Linda Gonzalez-Barrett entitled "Brighton Look Hardware")

Q. At some point, did you write back and say "Why do you keep saying I'm asking for Brighton sketches and Brighton hardware – A. No. Q. – when I never said anything like that?" A. No, I did not E-mail her back. I did pick up the phone. (Ex. B (Gonzalez-Barrett TT III-22:22-23:3)) |
| Q. In a deposition, you told us that you would search your E-mails for any documents relevant to this lawsuit, right? A. Yes. Q. And at deposition you told us that you didn't find any E-mails referencing Brighton, correct? A. Yes. (Ex. B (Gonzalez-Barrett TT III- | *See* Trial Exs. 249, 250, 269-270. |

| | |
|---|---|
| 20:3-8)) | |
| Q. The fact is that the similarities in the fabric pattern, the fabric color, the heart designs on the – and the heart design on the front, the zipper pulls, and the feet are not coincidence, are they, Ms. Barrett? A. I disagree. There are no similarities. (Ex. B (Gonzalez-Barrett TT III-26:1-5)) | *See* Trial Exs. 333-336. |

### Karen Reed – Product Designer at Coldwater Vendor, Excel Handbags

| Testimony | Evidence to the Contrary |
|---|---|
| Q. And you remember I was the one who questioned you at deposition, correct? A. Yes. Q. And you told me then under oath that you didn't recall any documents in your possession that refer to Brighton, correct? A. That's correct. Q. And you told me under oath that you had no e-mails that refer to Brighton, correct? A. Correct. Q. And you told me under oath that you don't recall anyone asking you to put Brighton-looking hardware on a bag. A. That's correct. Q. And you told me under oath that no one from Coldwater Creek had ever asked you to put more Brightony hardware on a bag, correct? A. That was to my recollection. (Ex. C (Reed TT II-232:1-17)) | "Linda, When Karen and I had met with you in July, we had shown you some styles and you requested we change the hardware on them to a more 'brighton-y' look for Fall." (Trial Ex. 250: Sept. 22, 2005 Email from Excel Handbags Design Department to Linda Gonzalez-Barrett entitled "Brighton Look Hardware") |
| Q. And you told me at deposition that if someone from Coldwater Creek had asked you to do a Brighton brief bag, you wouldn't even know what they were talking about, right? A. Well, to clarify that, they would have to be much more specific because I would not know exactly what they were talking about. (Ex. C (Reed TT II-233:14-19)) | "Linda, Please see the attached sketches of 'Brighton' briefbags that you requested to go along with the sketches sent on Friday." (Trial Ex. 270: October 3, 2005 Email from Excel Handbags Design Department to Linda Gonzalez-Barrett and cc'ing Karen Reed entitled "Brighton Look Briefbags") |
| Q. And at deposition, you swore under oath that no one from Coldwater Creek ever asked you to do sketches of Brighton-looking handbags, right? A. That's correct. | "Linda, As per your request, please see the attached 'Brighton' inspired sketches." (Trial Ex. 269: October 3, 2005 Email from Excel Handbags Design Department to Linda Gonzalez-Barrett entitled "'Brighton' Sketches") |

## Georgia Shonk-Simmons – Coldwater Chief Merchandising Officer

| Testimony | Evidence to the Contrary |
|---|---|
| Q. By the way, do you remember swearing under oath at your deposition that you weren't aware that anybody had sued Coldwater for copyright infringement? A. Yes. I didn't have the list that I have now in front of me, and I had never testified in court before for any case. Q. Well, you weren't aware that there were 11 lawsuits against Coldwater? A. No, I was not. (Ex. E (Shonk-Simmons TT IV-12:6-14)) | *See* Trial Ex. 240 – Intellectual Property Rights Litigation – Coldwater as Defendant |
| Q. And you say that you don't really know Brighton, one of your own vendors, for the past decade? A. What we did with Legion [sic], which is the company we worked with, was purchase belts and a few bags. And I did not know they were affiliated with Brighton. Q. So with your intimate knowledge of the apparel business and the products that you're selling where you approve every product the company sells – right? A. Yes. Q. – you didn't know that Legion [sic] was Brighton? A. No, I did not. (Ex. E (Shonk-Simmons TT IV-72:7-17)) | Q. Now, you're aware that Coldwater actually bought product from Brighton in the past, right? A. Yes, I am. Q. And Brighton was going under the name Legion [sic] when you were buying product, correct? A. Yes. (Ex. B (Gonzalez-Barrett TT III-5:17-22)) |

### E.   The Jury Finds that Coldwater Willfully and Maliciously Infringed Brighton's Rights and Awards Brighton Actual Damages and Wrongful Profits in Excess of $7 Million

The jury rendered a verdict on November 21, 2008. The jury found that Coldwater willfully infringed Brighton's Carolina copyright, awarding Brighton over $3.2 million in actual damages and over $800,000 in wrongful profits. (Ex. A.) The jury also found that Coldwater willfully committed trade dress infringement and false designation of origin and acted with malice, fraud and/or oppression by engaging in unfair competition. As a result, the jury awarded Brighton more than $2.6 million in actual damages and nearly $700,000 in wrongful profits on these claims. (*Id.*)

III.   **THIS COURT SHOULD AWARD BRIGHTON ITS REASONABLE ATTORNEYS' FEES**

    A.   **Brighton is Entitled to its Fees Under the Copyright Act**

        1.   The Copyright Act Encourages an Award of Attorneys' Fees to the Prevailing Party

The Copyright Act authorizes district courts to award attorneys' fees to the prevailing party in a copyright action. *See* 17 U.S.C. § 505 ("Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs"). In fact, "attorneys' fees in copyright cases is the rule rather than the exception, and should be awarded routinely." *Hogan Systems, Inc. v. Cybersource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cir. 1998) (citation omitted); *see also Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 486 F.3d 352, 362 (6th Cir. 2007) (attorney's fees "are awarded routinely" to prevailing parties in copyright infringement cases); *Atlantic Recording Corp. v. Andersen*, 2008 WL 2536834, at *1 (D. Or. June 24, 2008) (same); *Branch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359, 1365 (S.D.N.Y. 1991) (same). "Plaintiffs in copyright actions may be awarded attorneys' fees simply by virtue of prevailing in the action: no other precondition need be met . . . ." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989); *Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996) ("Exceptional circumstances are not a prerequisite to an award of attorney fees and costs . . . ."); *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1104 (N.D. Cal. 2003) (same).

Although a finding of willfulness is not a prerequisite to a fee award under the Copyright Act, "willful infringement is an important factor favoring an award of fees . . . ." *Historical Research*, 80 F.3d at 379. Indeed, as one District Court in this circuit recently stated: "***I have found no reported decisions in which a plaintiff that established willful infringement was not awarded attorney fees.***" *Dunn & Fenley, LLC v. Allen*, 2007 WL 2973549, at *3 n.1 (D. Or. Oct. 9, 2007).

1                 2.      <u>Brighton is the Prevailing Party Under the Copyright Act</u>

2        "In copyright infringement cases, generally, the prevailing party is one who

3 succeeds on a significant issue in the litigation that achieves some of the benefits

4 the party sought in bringing suit". *Thoroughbred Software*, 488 F.3d at 362.

5 Indeed, "***[t]he plaintiff will ordinarily be regarded as the prevailing party if he***

6 ***succeeds at trial in establishing the defendant's liability, even if the damages***

7 ***awarded are nominal or nothing***". *Wall Data Inc. v. Los Angeles County Sheriff's*

8 *Dept.*, 447 F.3d 769, 787 (9th Cir. 2006) (*quoting* Nimmer on Copyright, §

9 14.10[B], at 14-176-14-177) (emphasis added); *see also Scanlon v. Kessler*, 23 F.

10 Supp. 2d 413, 415-16 (S.D.N.Y. 1998) (plaintiff was prevailing party where court

11 found defendant infringed two copyrights, even though court had previously

12 dismissed other claimed copyrights and plaintiff recovered statutory damages of

13 only $1000); *Branch*, 772 F. Supp. at 1365 (copyright owner of cookbooks who

14 received $1 in nominal damages was still prevailing party under Copyright Act).

15        Here, the jury not only found Coldwater liable for infringing Brighton's

16 copyright at issue, but found Coldwater's infringement to be willful.  The jury

17 awarded Brighton over $3.2 million in actual damages and over $800,000 in

18 wrongful profits.  Brighton is unquestionably the prevailing party under the

19 Copyright Act.

20                 3.      <u>This Court Should Award Brighton its Reasonable Fees Under</u>

21                      <u>the Copyright Act</u>

22        Although courts routinely award attorneys' fees to prevailing parties in

23 copyright cases, courts are guided by the following factors in analyzing a fee

24 award: "(1) the degree of success obtained, (2) the frivolousness and motivation of

25 the defense, (3) the objective unreasonableness (legal and factual) of the defense,

26 and (4) the need to advance considerations of compensation and deterrence." *Smith*

27 *v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996).

28

1
2

        a.    <u>Brighton achieved overwhelming success on its copyright claims</u>

3      Brighton's success on its copyright claim was overwhelming.  Indeed,

4  Brighton was unable to locate a copyright case in which the plaintiff achieved this

5  level of success and was denied attorneys' fees.

6
7

        b.    <u>Coldwater's defense was unreasonable and motivated in bad faith</u>

8      From the very start of this litigation, Coldwater's defense was designed both

9  to bully Brighton and obscure the truth.  When Brighton asked Coldwater to stop

10  selling the infringing products, Coldwater duped Brighton into agreeing to an

11  extension to respond to the letter and then filed a preemptive declaratory relief suit

12  in Idaho.  When Brighton asked Coldwater for basic discovery – *i.e.*, emails

13  referring to Brighton – Coldwater withheld and denied the existence of those

14  critical documents until after depositions and the close of discovery.[11]  When

15  Brighton questioned Coldwater's witnesses under penalty of perjury at depositions

16  and at trial, Coldwater's witnesses repeatedly lied under oath.

17      Coldwater's defense was the very definition of unreasonableness and bad

18  faith.  It was designed to hide the truth and intimidate Brighton into abandoning

19  clearly meritorious claims.

20
21

        c.    <u>Awarding the requested fees would compensate Brighton and deter Coldwater and other potential infringers</u>

22      A fee award in a copyright infringement action serves "the purpose of

23  encouraging private enforcement and deterring infringements." *Frank Music*

24  *Corp.*, 886 F.2d at 1556; *see also Wall Data*, 447 F.3d at 787 (affirming district

25  court's finding that fee award furthered the goal of copyright law, even though

26  plaintiff recovered less than originally sought and no finding of willful

27

28  <sup>11</sup>    Moreover, Coldwater never produced or brought to trial the powerpoint presentation that Coldwater sent to its vendor regarding the "jacquard collection".

1   infringement); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996)

2   (remanding denial of attorneys' fees to reconsider goal of deterring future copyright

3   infringement); *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 568 (2d Cir. 1994)

4   (fee award serves as an appropriate "economic incentive for a copyright holder to

5   use the courts in challenging an infringement."); *Chi-Boy Music v. Charlie Club,*

6   *Inc.*, 930 F.2d 1224, 1230 (7th Cir. 1991) ("Attorneys' fees may be awarded for

7   reasons other than simply making the plaintiff whole, such as encouraging the

8   assertion of colorable copyright claims and deterring infringement.").

9        A fee award is necessary to make Brighton whole.  Actual damages attempt

10   to place a plaintiff in the same position but for the defendant's misconduct.

11   However, actual damages make this assessment without regard to the costs of

12   litigation.  Where Brighton was forced to spend over $1 million to enforce its

13   intellectual property rights, the jury verdict does not place Brighton in the position

14   in which it would have been but for Coldwater's misconduct.  Absent an award of

15   attorneys' fees, there is less incentive for Brighton (and others) to protect

16   intellectual property.  When authors cannot protect their creations from obvious

17   infringement, they no longer have an incentive to create, and creative expression in

18   this country diminishes.

19        A fee award also properly censures Coldwater and deters it and others from

20   engaging in similar conduct in the future.  Coldwater willfully infringed upon

21   Brighton's rights and then engaged in a pattern of litigation tactics in an effort to

22   prevent the truth from coming to light.  Coldwater has repeatedly knocked off

23   others in the past.  Infringement is engrained in the Coldwater culture.  Indeed, at

24   trial, Ms. Gonzalez-Barrett was asked whether she ever considered the effect of

25   Coldwater's knockoffs on Brighton and its sales.  Her response: "Not for one

26   minute". (Ex. B (Gonzalez-Barrett TT III-30:7-10).)  Shifting fees forces infringers

27   to consider the effect they have on copyright holders.  It also discourages Coldwater

28   and others from using high litigation costs as a means of silencing the complaints of

1    copyright holders who cannot afford to voice their fully meritorious complaints.

2    Many defendants with deep pockets simply drown such plaintiffs in litigation costs,

3    thus forcing an unreasonable settlement or precluding litigation altogether.  For

4    example, in this trial, Neal Decker testified that, as a young designer and

5    entrepreneur, he simply lacked the means to file suit against Coldwater.

6         Finally, the evidence at trial showed that, even during this lawsuit, Coldwater

7    infringed upon another Brighton copyrighted design.  To a large company such as

8    Coldwater with a longstanding policy of knocking off others, the filing of a lawsuit

9    alone will not deter it from intellectual property infringement.  Requiring Coldwater

10   to pay not only its own fees but the fees of the designers that it knocks off should

11   motivate Coldwater to change its misguided and harmful practices.

12   **B.     Brighton is Entitled to its Fees Under the Lanham Act**

13        The Court may also award attorneys' fees under the Lanham Act in

14   exceptional cases.  *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may

15   award reasonable attorney fees to the prevailing party.").  "While the term

16   'exceptional' is not defined in the statute, attorneys' fees are available in

17   infringement cases where the acts of infringement can be characterized as

18   malicious, fraudulent, deliberate, or ***willful***."  *Rio Properties, Inc. v. Rio Intern.*

19   *Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (emphasis added); *see also Sealy,*

20   *Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984) ("A trademark case is

21   exceptional for purposes of an award of attorneys' fees where the infringement is

22   malicious, fraudulent, deliberate or ***wilful***.") (emphasis added).  Therefore, in this

23   circuit, a finding of willfulness alone makes a case "exceptional" under the Lanham

24   Act.  *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir.

25   2008) (holding that District Court properly found case exceptional under Lanham

26   Act where, in default judgment case, the plaintiff had pled willful infringement);

27   *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1217 (9th Cir. 2003)

28   (finding of willful infringement makes case "exceptional" under Lanham Act).

-16-

1   "[N]umerous courts have awarded attorneys' fees to trademark owners who

2   prosecuted actions against willful and deliberate infringers . . . ." *Playboy*

3   *Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1276 (9th Cir.

4   1982).  Indeed, when Congress amended the Lanham Act to allow fees in

5   "exceptional cases," it specifically encouraged courts to award fees against willful

6   infringers.  According to the Senate Report commenting upon the addition of the

7   fee provision in the Lanham Act:

> Effective enforcement of trademark rights is left to the
> trademark owners and they should, in the interest of
> preventing purchaser confusion, be encouraged to enforce
> trademark rights. ***It would be unconscionable not to
> provide a complete remedy including attorney fees for
> acts which courts have characterized as malicious,
> fraudulent, deliberate, and willful.***  The proposed
> amendment would limit attorney fees to 'exceptional
> cases' and the award of attorney fees would be within the
> discretion of the court.

16  *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1134 (9th Cir. 1986)

17  (quoting S. Rep. No. 1400, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong.

18  & Ad. News 7132, 7136) (emphasis added)).

19       The jury's verdict as well as Coldwater's actions compel a fee award under

20  the Lanham Act in this case.  The jury's finding of willful infringement as to every

21  cause of action renders this case exceptional under the Lanham Act.  *See Derek*

22  *Andrew*, 528 F.3d at 702; *Earthquake Sound Corp.*, 352 F.3d at 1217.  Moreover,

23  the jury found through clear and convincing evidence that Coldwater's actions were

24  undertaken with malice, fraud and/or oppression.  Not only did Coldwater engage

25  in intentional and malicious infringement, it attempted to manipulate the litigation

26  process through filing a preemptive action, hiding documents throughout discovery

27  and lying under oath.

28       Applying clear Ninth Circuit precedent to the circumstances of this case, fees

-17-

1   should be awarded pursuant to the Lanham Act as well.  *See Earthquake Sound*

2   *Corp.*, 352 F.3d at 1217-18 (upholding award of fees where infringement was clear

3   and the defendant intentionally used the infringing mark to take advantage of

4   plaintiff's goodwill in industry); *Playboy Enterprises*, 692 F.2d at 1276 (reversing

5   District Court's denial of fees under Lanham Act, stating "[s]ince the defendants'

6   actions cannot be justified as either a reasonable attempt to develop their own

7   trademark or as the result of innocent confusion concerning the existence of the

8   well recognized PEI trademarks, we cannot escape the conclusion that the 1975

9   amendment to the Lanham Act was specifically directed towards eliminating such

10   blatant activity").

11       **C.**   **Brighton's Request for $1,235,404 in Attorneys' Fees is Supported**

12            **by the Evidence and Reasonable Under the Circumstances**

13        "To determine what fee should be awarded, the court must first determine

14   the 'lodestar,' which is the number of hours reasonably expended on the litigation

15   multiplied by a reasonable hourly rate." *United Steelworkers of Am. v. Phelps*

16   *Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990); *see also Hensley v. Eckerhart*, 461

17   U.S. 424, 433 (1983) ("The most useful starting point for determining the amount

18   of a reasonable fee is the number of hours reasonably expended on the litigation

19   multiplied by a reasonable hourly rate.").

20          1.   The Hours Expended by Brighton's Counsel are Reasonable

21       In determining reasonable hours, the party requesting fees submits its time

22   records justifying the hours claimed to have been expended. *See Chalmers v. City*

23   *of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986); *cf. Fischer v. SJB-P.D. Inc.*,

24   214 F.3d 1115, 1121 (9th Cir. 2000) (party requesting fees meets burden "by simply

25   listing his hours and identifying the general subject matter of his time

26   expenditures").

27       Brighton has presented detailed billing statements from the law firms that

28   represented Brighton in this matter. (*See* Ross Decl. & Ex. N.)  Those billing

1   statements reveal the date, hours and nature of the work performed by Brighton's

2   attorneys. (*Id.*) The statements establish that Brighton's law firms have billed

3   approximately 3366 hours between July 2006 and November 2008 in litigating this

4   action.[12] (*Id.*)

5        The hours billed on this complex matter were reasonable in that they span

6   more than two years of litigation, including a jury trial. Moreover, as explained

7   above, the hours reflect the vigorous and unreasonable nature of Coldwater's

8   defense. The hours spent by Brighton in litigating this case over the past two years

9   were eminently reasonable.[13] *See, e.g., Eldorado Stone LLC v. Renaissance Stone*,

10  2007 WL 3308099, at *2 (S.D. Cal. Oct. 24, 2007) (awarding plaintiff fees totaling

11  $1,925,230 following jury verdict finding defendant intentionally infringed

12  plaintiff's trademark, copyright and misappropriated plaintiff's trade secret).

13        2.    The Hourly Rate of Brighton's Counsel is Reasonable

14        "A party seeking an award of attorney's fees bears the burden of submitting

15  evidence of the hours worked and the rate paid, as well as evidence that the rate

16  charged is in line with the prevailing market rate in the relevant community."

17  *Hawkins-Dean v. Metropolitan Life Ins. Co*, 2007 WL 2735684, at *1 (C.D. Cal.

18  Sep. 18, 2007). "The prevailing market rate is indicative of a reasonable hourly

19  rate." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). "[R]ate

20  determinations in other cases . . . are satisfactory evidence of the prevailing market

21  rate." *United Steelworkers*, 896 F.2d at 407.

22        This Court has routinely concluded that rates in excess of $500 per hour are

23

24  [12]    Brighton has deducted from its bills a small number of entries related to work done for
        other Brighton matters but that was inadvertently billed to this case.

25
    [13]    Coldwater has filed a motion for post-verdict discovery and has indicated an intent to file
26  additional post-trial motions. Further, Brighton will need to file replies in conjunction with this
    motion and its motion for a permanent injunction. Therefore, Brighton will reasonably incur
27  additional fees in conjunction with this case prior to its final resolution. Moreover, Mr. Frazer's
    former firm is in the process of obtaining from storage additional invoices related to Mr. Frazer's
28  work in the Idaho action. Brighton respectfully requests that this Court provide Brighton an
    opportunity to seek these additional fees at a later date.
                                                -19-

1   reasonable for experienced counsel handling complex litigation. *See, e.g., Moore v.*

2   *Bank of America, N.A. (USA)*, 2008 WL 68851, at *3 (S.D. Cal. Jan. 7, 2008)

3   (concluding that $550 per hour is a reasonable hourly rate); *Eldorado Stone*, 2007

4   WL 3308099, at *4 (finding hourly rates up to $520 per hour reasonable).[14]

5        As detailed in the Ross Declaration filed concurrently with this Motion,

6   Brighton's attorneys are experienced in intellectual property matters, and

7   particularly in trying such cases.  Brighton's attorneys provided quality

8   representation throughout this matter and particularly at trial.  The experience of

9   Brighton's attorneys clearly contributed to the substantial success Brighton obtained

10  in this case.

11             3.        Conclusion:  Brighton's Total Requested Fees Are Reasonable

12        Brighton's fees totaling $1,235,404 are reasonable in light of:  (a) Coldwater'

13  willful infringement; (b) the actual damages award of $5,893,000, the wrongful

14  profits award of $1,499,000; (c) the likely injunctive relief; (d) Coldwater's

15  unreasonable and frivolous defense of this action; (e) the need to make Brighton

16  whole and deter Coldwater and other potential infringers from similar knowing

17  misconduct in the future; and (f) the quality and experience of Brighton's legal

18  representation in this matter.

19

20

21  _____

[14]     The Central and Northern Districts also routinely conclude that rates
22  of nearly $600 per hour are reasonable for experienced counsel handling
    complex litigation. *See, e.g., Mitchell v. Metropolitan Life Ins. Co.*, 2008 WL
23  1749473, at *2 (C.D. Cal. April 7, 2008), at *2 (finding that "the 2008 prevailing market
    rate for plaintiff-side partner-level ERISA attorneys is $400-575/hour"); *Hawkins-Dean*,
24  2007 WL 2735684, at *3 (awarding attorney's fees for a partner with 20 years experience
    at the rate of $575 per hour); *Caplan v. CNA Financial Corp.*, 2008 WL 3970864, at *3-4
25  (N.D. Cal. Aug. 20, 2008) (awarding attorney's fees for a partner with 20 years
    experience at the rate of $575 per hour); *Pande v. ChevronTexaco Corp.*, 2008 WL
26  906507, at *4 (N.D. Cal. Apr. 1, 2008) (awarding partner with 20 years experience in
    complex business litigation an hourly rate of $575); *Petroleum Sales, Inc. v. Valero*
27  *Refining Co.-California*, 2007 WL 2694207, at *5-6 (N.D. Cal. Sep. 11, 2007) (awarding
    attorney's fees for a partner with 20 years experience at the rate of between $515 and
28  $575 per hour; awarding attorney's fees for a partner with 30 years experience at the rate
    of $616 per hour).

1   **IV.   THIS COURT SHOULD TREBLE OR DOUBLE BRIGHTON'S**
2         **DAMAGES UNDER THE LANHAM ACT**

3        "Section 35 of the Lanham Act gives the trial judge discretion to increase the
4   award of actual damages, not to exceed three times that amount, according to the
5   circumstances of the case." *Playboy Enterprises*, 692 F.2d at 1276; *see also* 15
6   U.S.C. § 1117(a) ("In assessing damages [for willful trademark infringement] the
7   court may enter judgment, according to the circumstances of the case, for any sum
8   above the amount found as actual damages, not exceeding three times such
9   amount."). District Courts have "wide discretion" to award treble damages under
10  section 1117(a). *See Friend v. H. A. Friend & Co.*, 416 F.2d 526, 533 (9th Cir.
11  1969).

12       "[D]efendant's ***willful infringement*** of plaintiff's rights warrants the trebling
13  of the actual damages . . . ." *VMG Enterprises, Inc. v. F. Quesada & Franco, Inc.*,
14  788 F.Supp. 648, 662 (D.P.R. 1992) (emphasis added). Enhanced damages are
15  necessary to deter future infringement. *See Cartier v. Symbolix Inc.*, 544 F. Supp.
16  2d 316, 319 (S.D.N.Y. 2008) ("[T]rebling of profits is appropriate to reflect the
17  willful nature of the infringement and to deter others from similar violations.");
18  *Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.*, 880 F.
19  Supp. 1005, 1025 (S.D.N.Y. 1994) ("[I]n cases of wilful violation of the Act,
20  [treble damages] may be used to deter further wilful violations."). Accordingly,
21  courts often award enhanced damages for willful infringement. *See, e.g., Nintendo*
22  *of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994)
23  (affirming treble damage award based upon willful violations of the Lanham Act);
24  *Canon U.S.A., Inc. v. Tiger Wholesale*, 1994 WL 219995, at *4 (C.D. Cal. Mar. 29,
25  1994) (awarding treble damages for willful infringement); *see also Gorenstein*
26  *Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)
27  (affirming treble damages award based upon deliberate infringement). In fact, the
28  Ninth Circuit has approved the doubling of a damages award in a false advertising

1    case to $40 million.  *See U-Haul Int'l v. Jartran Inc.*, 793 F.2d 1034, 1041 (9th Cir.

2    1986).

3            Here, the jury awarded Brighton $2,652,000 in damages based on

4    Coldwater's Lanham Act violations.  The Lanham Act and the caselaw described

5    above fully support an enhancement of that damage award.  Coldwater created an

6    entire line of products based upon Brighton's distinctive trade dress.  Coldwater did

7    so in an intentional and fraudulent attempt to usurp the goodwill that Brighton spent

8    decades developing with the public.  The infringement Brighton exposed in this

9    case is emblematic of Coldwater's larger business strategy of making *de minimis*

10   changes to other designers' works and selling those designs as its own.  As Neal

11   Decker testified and the documentary evidence showed, Brighton is not the first

12   designer that Coldwater deceitfully and intentionally copied.  Absent a strong

13   message from this Court, Brighton will not be the last of Coldwater's victims.

14           Coldwater sells over $1 billion in product each year.  To meet that demand,

15   absent an institutional change, Coldwater will continue to infringe on the rights

16   of other designers.  Indeed, notwithstanding this action, Coldwater has recently

17   started selling a watch that infringes upon another Brighton copyrighted design.

18   Finally, as this Court is aware, Coldwater is not alone in its distribution of Brighton

19   knockoffs.  An enhanced damages award would go a long way in deterring not only

20   Coldwater but others from engaging in willful infringement in the future.

21   V.      **THIS COURT SHOULD AWARD BRIGHTON PREJUDGMENT**

22           **INTEREST ON THE JURY'S AWARD OF ACTUAL DAMAGES AND**

23           **WRONGFUL PROFITS**

24           A.      **Prejudgment Interest Is Authorized Under Both the Copyright**

25                   **and Lanham Acts**

26           "*[C]ompound prejudgment interest is the norm in federal litigation*".  *In the*

27   *Matter of Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1332 (7th Cir. 1992)

28   (emphasis added).  The Ninth Circuit has specifically confirmed that "prejudgment

1    interest is available under the Copyright Act". *Polar Bear Productions, Inc. v.*

2    *Timex Corp.*, 384 F.3d 700, 716 (9th Cir. 2004). The Ninth Circuit reasoned:

3 | It is not difficult to imagine a case involving undisputed
4 | copyright infringement . . . in which prejudgment interest
     | may be necessary to discourage needless delay and
5 | compensate the copyright holder for the time it is
6 | deprived of lost profits or license fees.

7    *Id.* at 718; *see also Frank Music*, 886 F.2d at 1551 (holding prejudgment interest as

8    an available remedy under the 1909 Copyright Act). Therefore, prejudgment

9    interest is routinely awarded to plaintiffs in copyright cases. *See, e.g., Excelsior*

10   *College v. Frye*, 2007 WL 672517, at *4 (S.D. Cal. Feb. 21, 2007) ("[A]n award of

11   prejudgment interest on profits earned furthers the legislative purpose of removing

12   incentives for copyright infringement"); *Precision Craft Log Structures, Inc. v.*

13   *Cabin Kit Co.*, Inc., 2007 WL 1412502, at *2 (D. Idaho Jan. 17, 2007) (awarding

14   prejudgment interest in copyright case).

15        Prejudgment interest is also available under the Lanham Act. *See Babbit*

16   *Electronics, Inc. v. Dynascan Corp.*, 828 F. Supp. 944, 959 (S.D. Fla. 1993) ("The

17   Court may, in its discretion, award prejudgment interest [under the Lanham Act] on

18   the total amount of the damages award."); *see also Gorenstein Enterprises*, 874

19   F.2d at 435-36 (awarding prejudgment interest under the Lanham Act); *Nintendo of*

20   *America, Inc. v. NTDEC*, 822 F. Supp. 1462, 1467 (D. Ariz. 1993) (same). "The

21   purpose of awarding interest on a judgment [under the Lanham Act] is to

22   compensate the prevailing party for the loss of the use of money to which that party

23   was entitled." *Sherwood Brands of Rhode Island, Inc. v. Smith Enterprises, Inc.*,

24   2003 WL 22061871, at *2 (D.R.I. Mar. 31, 2003).

25   **B.**    **Brighton's Request for Prejudgment Interest is Reasonable and**

26          **Necessary to Effectuate the Policies of the Copyright and Lanham**

27          **Acts**

28        Due to Coldwater's aggressive defense, Brighton has waited over two years

-23-

1   to receive any recompense from Coldwater for its wrongdoing.  It is Coldwater's

2   fault, not Brighton's fault, that Brighton was not acquiring interest on its damages

3   during the past two years.  The time spent litigating this case should not inure to the

4   benefit of the wrongdoer, Coldwater, and to the detriment of the damaged party,

5   Brighton.  The Ninth Circuit agrees:

> Profits are awarded to the plaintiff not only to compensate
> for the plaintiff's injury, but also and primarily to prevent
> the defendant from being unjustly enriched by its
> infringing use of the plaintiff's property.  For the
> restitutionary purpose of this remedy to be served fully,
> the defendant generally should be required to turn over to
> the plaintiff not only the profits made from the use of his
> property, but also the interest on these profits, which can
> well exceed the profits themselves.

*See Frank Music, 886 F.2d at 1552.*

13      There is no reason for this Court to deviate from the norm of awarding

14   prejudgment interest, particularly where, as here, Coldwater is a willful infringer

15   and an award of prejudgment interest would effectuate the policies underlying the

16   Copyright and Lanham Acts.  This Court should award Brighton prejudgment

17   interest.

18      As to the proper amount of interest, in a related action – *Brighton v.*

19   *Renaissance Group International*, Case No. 06CV1115 – this Court ordered that

20   prejudgment interest be calculated based on the average statutory postjudgment

21   interest rate from the date of the filing of the action until the date of judgment,

22   compounded annually.  Brighton submits that this methodology is reasonable and

23   should be applied in this case as well.  *See also Nelson v. EG&G Energy*

24   *Measurements Group, Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994).

## VI.  **CONCLUSION**

26      For the foregoing reasons, Brighton respectfully requests that this Court

27   enter an Order awarding:  (a) Brighton's attorneys' fees totaling, to date,

28

-24-

1   $1,235,404; (b) a trebling or doubling of the $2,652,000 in the actual damages

2   awarded by the jury on Brighton's Lanham Act claims; and (c) prejudgment

3   interest.

4

Dated:  December 19, 2008          WINTON & LARSON, LLP

5                                      Steven W. Winton

6                                    LAW OFFICES OF GARY FREEDMAN

7                                      Gary Freedman

8                                    DREIER STEIN KAHAN BROWNE
                                       WOODS GEORGE LLP

9                                      Peter W. Ross
                                       Keith J. Wesley

10                                   By  /s/ Keith J. Wesley
                                        Keith J. Wesley

11

12                                   Attorneys for Plaintiff
                                     BRIGHTON COLLECTIBLES, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2121 Avenue of the Stars, 24th Fl., Los Angeles, CA 90067.

4

5

On December 19, 2008, I served the foregoing document described as: **BRIGHTON'S NOTICE OF MOTION FOR ATTORNEYS' FEES, ENHANCED DAMAGES UNDER THE LANHAM ACT AND PREJUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the parties in this action by serving:

6

7

8

SEE THE ATTACHED SERVICE LIST

9

[ ]   **By Envelope** - by placing [ ] the original [ ] a true copy thereof enclosed in sealed envelopes addressed as above and delivering such envelopes:

10

11

[ ]   **By Mail**: As follows: I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

12

13

14

[ ]   **By Personal Service**: I delivered such envelope by hand to the offices of the addressee(s).

15

16

[ ]   **By Federal Express**: I caused the envelope(s) to be delivered to the Federal Express box at 2121 Avenue of the Stars, California 90067, on _____, for delivery on the next-business-day basis to the offices of the addressee(s).

17

18

[ ]   **By Facsimile Transmission**: On _____ at _____ .m., I caused the above-named document to be transmitted by facsimile transmission, from fax number 310-275-5697, to the offices of the addressee(s) at the facsimile number(s) so indicated above. The transmission was reported as complete and without error. A copy of the transmission report properly issued by the transmitting facsimile machine is attached hereto.

19

20

21

[X]   **By E-Mail Electronic Transmission**:  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person(s) at the e-mail address(es) so indicated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

22

23

24

Executed on December 19, 2008, at Los Angeles, California.

25

[X]   FEDERAL I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

26

27

G. Diane Torosyan

28

-26-

BRIGHTON'S MOTION FOR ATTORNEYS' FEES, ENHANCED
DAMAGES UNDER THE LANHAM ACT AND PREJUDGMENT INTEREST

1

## SERVICE LIST

2

*Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*
USDC Southern District, Case No. 06-CV-1848-H (LSP)

3

4 | Alison L. Pivonka | Co-Counsel for Defendant
apivonka@swsslaw.com | Coldwater Creek, Inc.

5 | SOLOMON WARD SEIDENWURM
& SMITH LLP

6 | 401 "B" Street, Suite 1200
San Diego, CA 92101

7 | Telephone: (619) 231-0303
Facsimile: (619) 231-4755

8

9 | Peter J. Brann | Co-Counsel for Defendant
pbrann@brannlaw.com | Coldwater Creek, Inc.

10 | Stacy O. Stitham
sstitham@brannlaw.com

11 | BRANN & ISAACSON
184 Main Street

12 | P.O. Box 3070
Lewiston, ME 04243-3070

13 | Telephone: (207) 786-3566
Facsimile: (207) 783-9325

14 | Steven W. Winton | Co-Counsel for Plaintiff
swwinton@wintonlarson.com | Brighton Collectibles, Inc.

15 | WINTON & LARSON, LLP
11770 Bernardo Plaza Court, Suite 255

16 | San Diego, CA 92128
Tel:. (858) 385-0040

17 | Fax: (858) 385-0050

18 | Gary Freedman | Co-Counsel for Plaintiff
goromans@aol.com | Brighton Collectibles, Inc.

19 | LAW OFFICES OF GARY FREEDMAN
1149 Third Street, Suite 200

20 | Santa Monica, CA 90403
Tel.: (310) 576-2444

21 | Fax: (310) 576-2440

22

23

24

25

26

27

28

BRIGHTON'S MOTION FOR ATTORNEYS' FEES, ENHANCED
DAMAGES UNDER THE LANHAM ACT AND PREJUDGMENT INTEREST