PETER J. BRANN *[Admitted Pro Hac Vice]*
pbrann@brannlaw.com
STACY O. STITHAM *[Admitted Pro Hac Vice]*
sstitham@brannlaw.com
BRANN & ISAACSON
184 Main Street
P.O. Box 3070
Lewiston, ME 04243–3070
Telephone: (207) 786–3566
Facsimile: (207) 783–9325

ALISON L. PIVONKA [SBN 156977]
apivonka@swsslaw.com
EDWARD J. MCINTYRE [SBN 80402]
emcintyre@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231–0303
Facsimile: (619) 231–4755

Attorneys for Defendant
COLDWATER CREEK INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGHTON COLLECTIBLES, INC., <br><br> Plaintiff, <br><br> v. <br><br> COLDWATER CREEK INC., <br><br> Defendant. | CASE NO. 06–CV–1848–H(POR) <br><br> **COLDWATER'S WRITTEN OBJECTIONS TO BRIGHTON'S BILL OF COSTS** <br><br> **Date:** March 6, 2009 <br> **Time:** 10:00 a.m. <br> **Courtroom:** Clerk's Office, Room 4290 |

On February 11, 2009, Brighton submitted a bill of costs in the approximate amount of a quarter million dollars, seemingly seeking recovery for every expense it has incurred in connection with litigation of the above–captioned matter. *See* Doc. Nos. 330 & 331. Neither Southern District Local Rule 54.1 nor the other cited authorities stretch as far as Brighton would have it, and pursuant to L.R. 54.1(g)(1) Coldwater submits the following written objections to Brighton's bill of costs — in particular, its sweeping claim to its "full costs" under the Copyright Act. In support, Coldwater files the Declaration of Stacy O. Stitham ("Stitham Decl.").

## ARGUMENT

As noted by Brighton, the Court awarded Brighton "*reasonable* attorneys' fees and costs." Doc. No. 310 at ¶ 9 (emphasis supplied). As an initial matter, Coldwater submits that a quarter million dollars in taxable "costs" — approximately one–fifth the amount of Brighton's total claimed attorneys' fees — is *per se un*reasonable.

### I.   BRIGHTON IS NOT ENTITLED TO RECOVER ITS "FULL COSTS" ON ITS NON–COPYRIGHT CLAIMS UNDER THE COPYRIGHT ACT

**Scott.** Brighton's single largest "cost" it seeks to pass on to Coldwater is the amount paid to CrossField Associates in connection with the "likelihood of confusion" survey (the "Survey") performed by Brighton's expert, Dr. Carol Scott. As noted in Exhibit 7 to the supporting Declaration of Keith Wesley ("Wesley Decl."), Brighton seeks to recover the amount of $119,301.00 it expended in connection with the Survey. *See* Doc. No. 331–3 at Ex. 7. Its proffered authority for doing so is provided in its accompanying Memorandum in Support of the Application to Tax Costs, which categorizes the Survey as an additional cost "necessarily incurred" by Brighton "awardable as 'full costs' under the *Copyright Act* (17 U.S.C. § 505)." Doc. No. 330–2 at 2 (emphasis supplied).

Quite simply, the Survey has absolutely nothing to do with Brighton's sole successful copyright claim (for infringement of its "Carolina" heart design). On the contrary, the work performed by CrossField Associates and Dr. Scott — as evidenced by the fact that the result is identified and offered as a *likelihood of confusion* survey — clearly concerned Brighton's trade dress claim under the Lanham Act. Should there be any lingering doubt; Dr. Scott helpfully

1

identified the issue at trial when she commented that "in this particular instance, we're actually testing confusion *between the trade dress*." Stitham Decl. Exh. A. (Tr. IV–107, 108) (emphasis supplied).

Unsuccessfully attempting to turn a frog into a prince, Brighton creatively seeks to draw a connection between its *likelihood of confusion* survey under the Lanham Act and the *Copyright Act* as follows: "[a]s the survey showed, a critical component of consumer confusion was Coldwater's use of ornaments that infringed upon Brighton's copyrights. Therefore, Brighton's likelihood of confusion survey was relevant to the damages awarded to Brighton pursuant to the Copyright Act." Doc. No. 330–2 at 3. However, as the Brighton luggage used by Dr. Scott in her work *did not carry* the "Carolina" copyrighted design, *see* Stitham Decl. Exhs. A & B (Tr. IV–111, 112 (Scott); Tr. Exs. 378 through 381), the Survey certainly did not "show" that a "critical component of consumer confusion was Coldwater's use of ornaments that infringed upon Brighton's copyrights." *Id*. In short, Brighton is obviously not entitled to recover its expenses on its *Lanham* Act claim under the *Copyright* Act.

For the very same reason, Brighton is not entitled to recover Scott's fees for her trial preparation and deposition testimony, which it additionally requests under the purported authority of the Copyright Act, *see* Doc. No. 330–2 at 3, to the tune of $31,625.00. Doc. No. 331–3 at Ex. 8. As it is beyond dispute that Dr. Scott's work related to Brighton's *trade dress* claims, rather than its successful Carolina copyright claim, Brighton's claims for reimbursement of Scott's costs and expenses (in the total amount of $150,926.00) must be subtracted from Brighton's bill of costs.

**Wunderlich.**  Once again under the authority of the Copyright Act, Brighton claims its fees for "services rendered" and testimony by Dr. Robert Wunderlich, its damages expert, in the amount of $31,713.94. Doc. No. 331–3 at Ex. 8 & Doc. No. 330–2 at 3. Brighton's only authority provided for this claim is a citation to Coldwater's motion for attorneys' fees, which noted that costs available under the Copyright Act may include expert fees. Doc. No. 330–2 at 3. What Brighton fails to mention is that in that same motion, Coldwater apportioned its expert fees, requesting only those relating to the copyright claim on which it had prevailed at summary

1  judgment (*i.e.* non–infringement as a matter of law of the "Brighton Scroll" copyright, *see* Doc.
2  No. 179). *See* Doc. No. 275. Brighton, in contrast, seeks recovery of *all* of Wunderlich's expenses.
3    Coldwater incorporates by reference pursuant to Fed. R. Civ. P. 10(c) its objections to *any*
4  award of attorneys' fees and costs to Brighton in the face of the implied recognition by the Court
5  that Brighton had already been adequately compensated by the jury award, that further deterrence
6  was not required, and that neither frivolousness nor improper motivation was involved in
7  Coldwater's determination to fully litigate the Carolina claim. Doc. No. 304 at 8–9. *Cf. Fantasy,*
8  *Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir. 1996) (setting factors to guide courts' discretion in
9  determining award). However, even if Brighton is entitled to recover some costs, the costs
10 awarded by the Court were limited to *reasonable* costs. Doc. No. 310 at ¶ 9.
11   At the very least, Brighton's claim for Dr. Wunderlich's expenses must be apportioned and
12 reduced by half to be considered reasonable. Wunderlich analyzed Brighton's damages on its
13 copyright *and* trade dress claims — yet Brighton makes no attempt to offer a discount or to seek a
14 reasonable apportionment of expenses between those costs which may be awardable under the
15 Copyright Act and those flatly *un*awardable under the Lanham Act. *See Berry v. Hawaiian Exp.*
16 *Serv., Inc.,* 2006 WL 4102120, *16 (D. Haw. Oct. 25, 2006) (reduced claimed costs under Section
17 505 to account for non–copyright related costs); *Identity Arts v. Best Buy Enter. Servs. Inc.,* 2008
18 WL 820674, *9 (N.D. Cal. Mar. 26, 2008) (same). While there is concededly some overlap in the
19 Coldwater products which Wunderlich analyzed for purposes of his damages calculation, such is
20 by no means universally the case. Dr. Wunderlich included calculations for Coldwater's
21 "Americana Collection" in both his original expert report and his amended expert report — a
22 collection which did not carry the "Carolina" heart copyrighted design. Stitham Decl. Exhs. C–E.
23 Moreover, Wunderlich's calculation of damages owed Brighton continued into 2007, *see* Stitham
24 Decl. Exh. C (Tr. Ex. 435–7), at which point the Coldwater products at issue did not carry the
25 heart hardware which was the subject of Brighton's copyright claim. *See* Stitham Decl. Exh. A (Tr.
26 IV–215 (Wunderlich)).
27   Additionally, Brighton includes within its supporting documentation an invoice issued by
28 Dr. Wunderlich in the amount of $592.50, which postdates the trial and reflects work done to

3

1  calculate prejudgment interest. Doc. No. 331–3 at Ex. 8 (Invoice dated January 22, 2009). This
2  Court specifically denied Brighton's request for prejudgment interest by Order dated January 20,
3  2009. Doc. No. 304 at 8. If Brighton is not entitled to prejudgment interest under the Copyright
4  Act, it should not be compensated for work done in calculating the *amount* of such prejudgment
5  interest as part of its awardable costs under the very *same* statute.

6  In sum, the amount of $592.50, reflecting post–trial work done on a claim to relief to
7  which Brighton was not entitled, should be subtracted from the expenses of Dr. Wunderlich. The
8  remainder should be discounted by half in order to reasonably reflect the work Dr. Wunderlich
9  performed in relation to the "Carolina" copyright claim. As such, Brighton's claims for
10 Wunderlich's expenses must be reduced to the amount of $15,560.72.

11 **Legal Research.** Citing a Ninth Circuit decision regarding the compensability of legal
12 research under ERISA, Brighton seeks recovery of $17,160.10 in computerized research costs
13 under the Copyright Act. *See* Doc. Nos. 331–3 at Ex. 9 & 330–2 at 3. In support, Brighton
14 provides a series of redacted "invoices" which offer no indication as to *what* research was done (or
15 even a clear identification whether it was research done for Brighton *on this particular case,* as the
16 documents in question contain several different client/matter numbers) with a brief summary
17 offered simply stating that these amounts were for "[r]esearch regarding various issues of case."
18 Doc. No. 331–3 at Ex. 9.

19 Assuming these are all Brighton invoices related to research done on Coldwater's case
20 (rather than one of Brighton's many other lawsuits pending during approximately the same time
21 period), they do not even *purport* to be limited to research incurred as to the "Carolina" copyright,
22 the *only* successful copyright claim raised by Brighton, and hence properly the subject of any
23 request for costs awarded under the Copyright Act. *See Archlightz and Films Pvt. Ltd. v. Video*
24 *Palace Inc.,* 303 F. Supp. 2d 356 (S.D.N.Y. 2003) (reducing research charges when such charges
25 could be apportioned to claims against defendants resolved on summary judgment); *Berry,* 2006
26 WL 4102120 at *16. Brighton has not met its burden to show that the $17,160.00 it demands in
27 Westlaw and LexisNexis fees includes research for *any* copyright–related issues whatsoever —
28 much less that the *entire* amount should be allocated to this subject. *Am. Fed'l Bank, FSB v. U.S.,*

4

74 Fed. Cl. 208, 221 (Fed. Cl. 2006) ("The burden is on the applicant to substantiate its bill of costs…and the court is not required to dissect the applicant's submissions to separate recoverable from non–recoverable costs") (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983)). The Carolina copyright claim was only one–half of one of five claims asserted by Brighton in its First Amended Complaint (Doc. No. 30). Moreover, this litigation has ground its way through more than two years, and has involved extensive briefing. Brighton has authored discovery memoranda, filed motions *in limine,* and fought a number of other procedural and substantive battles, all of which no doubt involved legal research. It is entirely unreasonable to claim, as Brighton does, that *all* of its research should be attributed to research done on the "Carolina" heart copyright claim — as opposed to the "Brighton Scroll" copyright claim which it lost on summary judgment, the Lanham Act trade dress claim for which costs are not recoverable, or any of the other myriad procedural disputes which arose during the course of litigation.

Having failed to provide any evidence that any of the $17,160.00 in claimed online research fees is recoverable under the Copyright Act, this amount must be eliminated from Brighton's bill of costs.

## II. BRIGHTON IS NOT ENTITLED TO SEVERAL OF ITS CLAIMED EXPENSES UNDER L.R. 54.1 AND 28 U.S.C. § 1920

In addition to its claimed costs under the "Copyright Act," which it expansively reads to cover its litigation expenses soup to nuts (regardless of whether such expenses have any relation to its sole successful copyright claim), Brighton seeks reimbursement for several categories of costs under Local Rule 54.1 and 28 U.S.C. § 1920. While a number of these items are not objectionable, there are several which are not taxable to defendant. We consider each disputed item in turn.

**Exhibit 3.** Brighton includes within its request for court reporter fees the costs of obtaining a trial transcript, in the amount of $4,151.45. *See* Doc. No. 331–2 at Ex. 3. Local Rule 54.1(b)(2) specifically provides that the "cost of transcripts is not normally allowable" unless "before it is incurred, it is approved by a judge or stipulated to be recoverable by counsel." *Id.* The rule further provides that "[c]opies of transcripts for counsel's own use are not taxable in the absence of a special order of the court." *Id.*

**1**  Brighton has made no showing that the "trial proceedings" transcripts ordered were for
**2**  anything other than Brighton's personal use, and, regardless, the Court did not order (nor did the
**3**  parties stipulate) that such costs should be recoverable. Consequently, the amount of $4,151.45
**4**  should be removed from Brighton's bill of costs, reducing the total to $21,450.73

**5**  **Exhibit 4.**  Brighton claims reimbursement for the airfare and hotel–related expenses of
**6**  Neal Decker and Amy Delducco, witnesses at trial, in the amount of $2,996.35. At the outset,
**7**  Coldwater again incorporates by reference in accordance with Fed. R. Civ. P. 10(c) its previous
**8**  objections to the testimony of such witnesses. *See, e.g.,* Doc. Nos. 214 & 324. Regardless,
**9**  Brighton has not proved such expenses and therefore these costs are not properly taxed against
**10** Coldwater. Furthermore, even assuming Brighton's documentation is adequate; its claimed
**11** expenses exceed the statutory maximum amount it may be reimbursed for each witness.

**12** Brighton submits, as documentation for these fees, two redacted "expense reports" and an
**13** internal check request. One of the "amounts" listed for reimbursement — purportedly to reimburse
**14** Amy Delducco's airfare — is handwritten in, as the actual amount printed on the page is blacked
**15** out (leaving one to speculate how much Delducco was actually compensated for her "airfare").
**16** Likewise, Brighton submits a "check request" for Delducco with the handwritten notation that it is
**17** for "hotel parking" (the printed phrase "car rental" is crossed out). This is plainly insufficient
**18** documentation. *See* 28 U.S.C. § 1821(c)(3) (parking fees allowable *upon presentation of valid*
**19** *parking receipt*). *See also Ferguson v. Bombardier Servs. Corp.,* 2007 WL 601921, *5 (M.D. Fla.
**20** Feb. 21, 2007) (denying costs under 28 U.S.C. § 1821 when receipts for common carrier travel,
**21** hotel, parking, or taxi were not submitted); *In re Schwinn Bicycle Co.,* 210 B.R. 764, 771 (N.D. Ill.
**22** 1997) (reimbursement for witness's airfare denied where ticket stub from air carrier was not
**23** submitted in support); *NLFC, Inc. v. Devcom Mid–America, Inc.,* 916 F. Supp. 751, 764 (N.D. Ill.
**24** 1996) ("The remaining costs for parking and mileage have not been adequately evidenced and
**25** they must be denied").

**26** Even had Brighton submitted adequate documentation, its requested amount for lodging
**27** exceeds "the maximum *per diem* allowance prescribed by the Administrator of General Services,"
**28** *see* 28 U.S.C. § 1821(d)(2) & L.R. 54.1(b)(4)(a), which, for San Diego, was $201.00 per night

6

during the relevant time period. *See Telular Corp. v. Mentor Graphics Corp.,* 2006 WL 1722375, *9 (N.D. Ill. June 16, 2006) (reducing amount of claimed reimbursement for lodging in accordance with the United States General Services Administration rates); Stitham Decl. Ex. F (California FY 2009 *per diem* rates). Brighton, at least according to its handwritten records, spent nearly that much in *parking* for Delducco. *See* 331–2 at Ex. 4. *Cf. Vails v. Police Dep't of City of New York,* 1999 WL 970490, *2 (S.D.N.Y. Oct. 22, 1999) (finding car fare of $104.00 to be excessive).

As such, its generously claimed amounts of $515.54 for Decker's one–night hotel stay and $1,401.45 for Delducco's double–occupancy must, at minimum, be substantially curbed. Decker's charge must be reduced to $201.00 to comply with the applicable *per diem* rate. Brighton should be limited to the same amount of recovery for Delducco, as there is absolutely no indication that a two–night stay was necessary. Neal Decker, who traveled all the way from New York to attend trial, was evidently perfectly able to get by with one night's stay. In contrast, Delducco, coming a much shorter distance (from nearby Idaho), has run up a sizeable $1,401.45 in hotel bills for her extended trip to San Diego. Brighton is entitled to recover for only one night's lodging for Delducco, and that amount must be reduced to comport with the applicable *per diem* rate of $201.00

In short, Brighton's claimed witness expenses should be reduced from $3,169.05 to $172.70, due to a failure to adequately submit supporting documentation of the costs incurred with Decker and Delducco — as exemplified by the fact that Delducco's "invoices" contain scribbled–in figures and notations and redactions of the actual printed entries. In the alternative, and at a minimum, Brighton's claimed expenses in this category must be reduced to $1,654.06, to reflect the maximum *per diem* recovery allowed under 28 U.S.C. § 1821(d)(2) (incorporated by L.R. 54.1(b)(4)(a)).

**Exhibit 5.** Brighton additionally requests reimbursement in the amount of $12,387.52 for "exemplification" and "copies of papers for case." *See* Doc. No. 331–2 at Ex. 5.

Local Rule 54.1(b)(6) provides that several categories of copying costs are taxable when "necessarily obtained for use in the case." To be recoverable, the copies must meet at least one of

the criteria listed in section (a). The only potentially relevant provisions are subsections (1) and (2), which respectively require that copies be "provided either to the court or to opposing counsel either by court order, rule or statute" or used as court exhibits that are "admitted into evidence, or attached to a motion." *Id.* Application of these principles to Brighton's sought–after copying costs demonstrates that Brighton's request must be reduced.

*First,* Brighton's generic miscellaneous requests for "preparation of *defendant's* trial exhibits" for its own use should be disallowed, as it is tethered to neither provision. *Cf.* L.R. 54.1(b)(6)(b)(3) ("The cost of copies obtained for counsel's own use is not taxable"). This eliminates invoices #323682, 323759, and 326398 as described on Brighton's accompanying Itemization of Fees ("Itemization") — in the combined amount of $2928.43.

*Second,* Brighton claims recovery on a number of "in–house charges" of twenty–five cents for court filings, in the total amount of $843.00. It is relatively clear that this figure represents Brighton's profit margin as well as actual copying costs, and should accordingly be reduced to twelve cents per page, which, as a review of Brighton's third–party vendor invoices also included in Exhibit 5 establishes, is the actual cost of such copies. *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 779 F. Supp. 1063, 1111–12 (D. Ariz. 1990) (reducing in–house photocopying costs claimed at twenty or twenty–five cents: "[t]hat this amount may be charged to regular clients by the firm, or that it is 'standard' in the firm's area of practice, is not controlling, [and] Class members will not be assessed an amount that produces a clear and unwarranted profit for the firm"), *rev'd on other grounds,* 19 F.3d 1306 (9th Cir. 1994). *See also In re San Juan Dupont Plaza Hotel Fire Litig.,* 111 F.3d 220, 236–8 (1st Cir. 1997) (reducing in–house photocopy charges from twenty–five cents per page to ten cents per page); *Foraker v. Apollo Group, Inc.,* 2007 WL 2301269, *1 (D. Ariz. Aug. 9, 2007) (affirming Clerk's denial of request that copying costs be taxed due, in part, to a failure "to address why a copying cost of 20 cents per page is reasonable"). Accordingly, Coldwater should be taxed only $404.64 of Brighton's "costs" of photocopying.

1       *Third,* Brighton's request for amounts incurred in copying Trial Exhibit 440 (invoice # 326445), should be disallowed on grounds that the document was not admitted at trial. *See* Doc. No. 260 at 440. *Cf.* L.R. 54.1(6)(a)(2). As such, the amount of $202.83 should be subtracted.

*Fourth,* Brighton's Itemization and supporting documentation are insufficient to establish its entitlement to recovery for the two vague entries identified in such Itemization merely as "[p]reparation of Plaintiff's trial exhibits" (invoices #323481 and 323480, in the combined amount of $516.13) provided for "Trial." These entries, which appear to be distinct from Brighton's later claimed recovery for "preparation of Plaintiff's Trial Exhibits," *see* invoice #323674, have not been satisfactorily identified pursuant to L.R. 54.1(b)(6)(c), requiring a "specific showing" of, among other things, a description of "the documents copied," "to whom they were provided," and "the use of or intended purpose for the items copied."

*Fifth,* the parties were ordered by the Court to duplicate the jury questionnaires completed in this case and to bear such costs. Doc. No. 218. Invoice #0220594–IN, detailing the total cost of $202.79 for scanning of such questionnaires and the creation of a CD containing the same, represents the parties' observance of this Order. Indeed, it is clear that this represents the costs incurred with compliance since, as noted on the invoice itself, the billing was split with Solomon Ward, defendant's local counsel. However, Brighton also produces an additional document, invoice #326401 (in the amount of $151.50), which *predates* the invoice for scanning costs and is from an entirely different vendor. On this document is handwritten: "jury questionnaire."

This is plainly insufficient to establish that the copies made pursuant to this earlier invoice were actually of jury questionnaires. Even if such were the case, Brighton's choice to make *additional* "heavy litigation copies" of the juror questionnaires was *not* done to comply with the Court's October 28, 2008 Order (as evidenced by the fact that there is no indication that Solomon Ward was asked to bear any of these charges), but rather, purely a matter of strategy. Brighton has failed to meet the threshold standard for recovery under the only applicable provision of L.R. 54.1(b)(6)(a) — that copies be provided… "by court order, rule or statute." *Id.* at (1). The amount of $151.50 must be eliminated from Brighton's taxable costs.

**1**  In short, Brighton's request for copies obtained for use in the case should be reduced to the

**2**  amount of $8,150.27, after subtracting the non–taxable amounts listed above.

**3**  **Exhibit 6.** Brighton submits four invoices from the Sunblorn Design Group for the "design

**4**  and preparation of trial exhibits for presentation of exemplars and issues of case." Doc. No. 331–3

**5**  at Ex. 6. In total, it seeks compensation in the amount of $3,375.16, presumably under L.R.

**6**  54.1(b)(7), which permits visual aids to be taxable as costs "if such exhibits are reasonably

**7**  necessary to assist the jury or the court in understanding the issues at the trial. An explanation of

**8**  how the above related to a material issue in the case shall be provided." *Id.*

**9**  Brighton's counsel provides the offered explanation of materiality in his declaration, noting

**10**  that "[t]hese exhibits were invaluable in demonstrating that Coldwater's designs were substantially

**11**  similar to Brighton's designs — a necessary element in a *copyright infringement action* — and

**12**  that Coldwater's infringement was willful." Wesley Decl. ¶ 7 (Doc. No. 331–2) (emphasis

**13**  supplied). A review of the invoices gathered in Exhibit 6; however, demonstrate that much of the

**14**  work done relates to the failed "Brighton Scroll" copyright claim as well as Brighton's claimed

**15**  similarities between the "zippers" and "feet" of its luggage and Coldwater's handbags.

**16**  While a comparison of Brighton's designs and Coldwater's designs may have been, as

**17**  Brighton's counsel argues, a "necessary element in a copyright infringement action" *for the*

**18**  *Carolina copyright claim*, it is certainly not for the Brighton Scroll design, which was decided

**19**  against Brighton at summary judgment and therefore *not* at issue in the case. As such, it is

**20**  abundantly clear that any work done on such exhibits was not "reasonably necessary" to assist

**21**  *anyone* in "understanding the issues at the trial," *cf.* L.R. 54.1(b)(7) — and Coldwater should not

**22**  be taxed Brighton's costs in making such exhibits which confused, rather than clarified, the issues.

**23**  *Cf. Cefalu v. Village of Elk Grove,* 211 F.3d 416, 428 (7th Cir. 2000) (observing that § 1920 "does

**24**  not obligate the losing party to pay for the victor's 'glitz'…") (citation omitted); *In re Turn–Key–*

**25**  *Tech Matters,* 2002 WL 32521816, *1 (C.D. Cal. Sept. 26, 2002). Nor can work done comparing

**26**  Brighton "feet" and "zippers" to Coldwater "feet" and "zippers" be considered "reasonably

**27**  necessary" to understanding the issues at trial when neither element was a part of Brighton's trade

**28**

dress *or* copyright claims. Indeed, Brighton fails to even provide an explanation of the relationship between these comparisons and a "material issue in the case," as required.

As such, Brighton's recovery should be discounted. Only one–fifth of the exhibits listed in the first invoice relate to the Carolina heart; similarly, only one–fourth of the exhibits listed in the third invoice so relate. Both invoices should be proportionately discounted, to $169.50 and $176.25, respectively. While Coldwater questions whether Brighton's exhibit displaying the relevant "players" is actually "necessary" to an understanding of any material issue in this case (particularly given that Coldwater was the only defendant), even assuming such is the case, the fourth invoice must still be discounted by three–fifths, to limit recovery for work done on the non–taxable Scroll, Feet, and Zipper exhibits (reducing the total to $638.06).

Because Brighton's claimed invoices include work done on exhibits which bear no relation to any material issue in the litigation, Brighton's claim of $3,375.16 in costs for visual aids should be reduced to $1,211.31.

## CONCLUSION

For the reasons set forth above, and to the extent outlined above, Coldwater objects to Brighton's bill of costs.

DATED: February 25, 2009            SOLOMON WARD SEIDENWURM & SMITH, LLP

                                    By:  */s/ Alison L. Pivonka*
                                         ALISON L. PIVONKA

                                         PETER J. BRANN *[Pro Hac Vice]*
                                         STACY O. STITHAM *[Pro Hac Vice]*
                                         BRANN & ISAACSON

                                         Attorneys for Defendant
                                         COLDWATER CREEK INC.

<b><u>CERTIFICATE OF SERVICE</u></b>

I caused **COLDWATER'S WRITTEN OBJECTIONS TO BRIGHTON'S BILL OF COSTS** to be served in the following manner:

**<u>Electronic Mail Notice List</u>**

The following are those who are currently on the list to receive e–mail notices for this case.

| | |
|---|---|
| Steven W. Winton, Esq.<br>Winton and Larson<br>11770 Bernardo Plaza Court<br>Suite 255<br>San Diego, CA 92128<br>swwinton@wintonlarson.com<br>Tel: 858–385–0040<br>Fax: 858–385–0050<br>Attorneys for Plaintiff | Peter W. Ross, Esq.<br>Sylvia Lardiere, Esq.<br>Keith J. Wesley, Esq.<br>Dreier Stein Kahan Browne Woods George LLP<br>450 North Roxbury Drive, Seventh Floor<br>Beverly Hills, CA  90210–4231<br>Tel: 310–274–7100<br>Fax: 310–275–5697<br>pross@dskbwg.com<br>slardiere@ dskbwg.com<br>kwesley@ dskbwg.com<br>Attorneys for Plaintiff |
| Peter J. Brann, Esq.,<br>Stacy O. Stitham, Esq.<br>Brann & Isaacson<br>184 Main Street (04240–7070)<br>PO Box 3070<br>Lewiston, ME 04243–3070<br>Tel: 207–786–3566<br>Fax: 207–783–9325<br>pbrann@brannlaw.com<br>sstitham@brannlaw.com<br>Attorneys for Defendant Coldwater Creek, Inc. | |

**<u>Manual Notice List</u>**

The following is the list of attorneys who are not on the list to receive e–mail notices for this case (who therefore require manual noticing).

None.

<i>/s/ Alison L. Pivonka</i><br>ALISON L. PIVONKA